621 F.2d 640
 Delfino SILVA and Jose Miranda, Jr., Individually and on
behalf of all others similarly situated,
Plaintiffs-Appellees,
v.
Raymond W. VOWELL, Individually and in his capacity as
Commissioner of the Texas Department of Public
Welfare, and the State Department of
Public Welfare, Defendants-Appellants.
 No. 79-2905.
 United States Court of Appeals,
Fifth Circuit.
 June 26, 1980.
 
 Kathryn A. Reed, Asst. Atty. Gen., Austin, Tex., for defendants-appellants.
 Gerald A. Garcia, Texas Rural Legal Aid, Inc., Harlingen, Tex., Jose Antonio Gomez, Oficina Legal Del Pueblo Unido, San Juan, Tex., for plaintiffs-appellees.
 Appeal from the United States District Court for the Southern District of Texas.
 Before TJOFLAT, RUBIN and TATE, Circuit Judges.
 TATE, Circuit Judge:
 
 
 1
 This class action suit challenges the Texas incapacity eligibility standard for receipt of benefits under the Aid to Families with Dependent Children (AFDC) program. The plaintiffs, Delfino Silva and Jose Miranda, are AFDC applicants, and they filed a class action in December of 1975 attacking the Texas incapacity standard. Without detailing the specifics of their complaint, it is sufficient for the moment to say that the district judge granted summary judgment for the plaintiffs on the only substantive claim that had not been mooted by a subsequent revision of the Texas regulations. Further, although retroactive benefits were denied, the court certified the class and ordered the defendants to pay for preparing and mailing an explanatory notice to the class members, explaining that the regulations had been changed and that the class members had a right to reapply for benefits. The defendants, the Texas Department of Public Welfare (currently the Texas Department of Human Resources) and its Commissioner, Raymond W. Vowell, now appeal from the district court's ruling on the following grounds: 1) that the district court lacked jurisdiction over the subject matter of this litigation; 2) that the named plaintiffs do not have standing to represent the class; and 3) that requiring the defendants to bear the expense of preparing and mailing the notice to the class violates the Eleventh Amendment. For the reasons discussed below, we affirm in part and remand in part.
 
 Context of the Issues
 
 2
 As will be more particularly shown in an appendix to this opinion (History of the Litigation ), the attack by the defendants on the trial court's jurisdiction and the plaintiffs' standing to continue this class action arises in the following context.
 
 
 3
 The class action suit, as initially brought in 1975, contested primarily the eligibility requirement for aid to dependent children that disqualified the families of dependent children from such aid if the father was "capable of light work." There is no doubt that both plaintiffs had standing to assert such claim as class representatives. In May, 1978, the suit was broadened to attack other facets of the disability requirements, including pertinently the requirement that prevented the families of dependent children from receiving welfare payments unless their fathers would be (or would continue to be) disabled for sixty days or more. At this time, the defendants stated (admittedly in equivocal terms, see note 12, infra ) that they had no objection to certification of the class. At the same time, a showing was made that administrative revision of the other disability requirements in the Texas AFDC Handbook would moot all of the plaintiffs' substantive contentions except that pertaining to the sixty-day disability requirement. In December, 1978, the district court granted summary judgment for the plaintiffs invalidating the sixty-day requirement.
 
 
 4
 In April, 1979, the defendants for the first time filed a motion to dismiss for want of jurisdiction. The defendants also objected for the first time that the plaintiffs were not adequate class representatives because they themselves had not been denied benefits because of the sixty-day eligibility period but rather because they were "capable of light work." As the district court noted, the invalid "capable of light work" requirement had been revised as a result of this class action; one consequence of the judgment below is that the defendants must send out notices to all applicants who were denied, improperly, eligibility for welfare benefits by reason of this requirement. However, the certification of the class to which no objection by the defendants had been urged in May, 1978 and the description of which the defendants had approved when it was formalized in June, 1979 included all Texas residents who since October, 1976 had had applications for AFDC welfare payments rejected or benefits terminated because of the improper Texas disability standard (including both the "capable of light work" and the sixty-day disability requirements). The record also shows that the plaintiff Silva, although now receiving AFDC payments because of the elimination of the "capable of light work" requirement, is subject to termination of his benefits by reason of the sixty-day disability requirement should his disability lessen into one of this temporary duration.
 
 I.
 
 5
 The first issue that must be resolved is whether the district court had jurisdiction. The defendants rely on the Supreme Court's holding in Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), that a federal court has no jurisdiction under 28 U.S.C. § 1343[1] and 42 U.S.C. § 1983[2] to hear a claim that is wholly based on a conflict between state and federal law.[3] In view of Chapman, it is not disputed that the district court did not have jurisdiction unless the plaintiffs presented the court with a substantial constitutional claim.[4]
 
 
 6
 The plaintiffs argue that the district court correctly ruled that there was a substantial constitutional claim and that consequently the court had pendent jurisdiction over the statutory claim concerning a conflict between state and federal law.[5] The defendants, on the other hand, contend: a) that there never was a substantial constitutional claim; and b) that the plaintiffs' allegedly substantial constitutional claims are really nothing more than an attempt to circumvent the ruling in Chapman.
 
 
 7
 (a) Was There a Substantial Constitutional Claim?
 
 
 8
 Chapman makes it clear that the court in the instant case did not have independent federal jurisdiction over the Supremacy Clause claim. However, the district court had the power to exercise pendent jurisdiction over the statutory conflict claim if it had jurisdiction over a related and substantial constitutional claim. A federal court has discretion to exercise pendent jurisdiction over a claim not otherwise cognizable in federal court as long as the court has jurisdiction over one claim and the pendent claim derives from the same "common nucleus of operative fact." United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); Kimbrough v. Arkansas Activities Association, 574 F.2d 423, 427 (8th Cir. 1978). Although pendent jurisdiction is often exercised when a related state claim is pended to a federal claim, in the instant case, the plaintiffs attempted to pend one federal claim (their Supremacy Clause claim or statutory claim) to another federal claim (their Due Process and Equal Protection Clause claims). The question with respect to jurisdiction is whether the plaintiffs presented the court with a substantial federal constitutional (Equal Protection or Due Process) claim such that the court had the power to exercise pendent jurisdiction over the statutory conflict (Supremacy Clause) claim.
 
 
 9
 Pretermitting any discussion of the plaintiffs' Due Process claim, which was not diligently pursued in the lower court, it is clear that the plaintiffs' initial complaint raised a substantial Equal Protection claim. Although, the argument was not fleshed out in the complaint, the plaintiffs argue on appeal that the Texas "capable of light work" standard unlawfully and irrationally discriminated between children who were needy because their fathers were totally disabled and children who were needy because their fathers were completely unable to obtain work even though only partially disabled and "capable of light work." The plaintiffs contend that the Texas "capable of light work" standard irrationally ignored the fact that children of partially incapacitated fathers are just as needy as children of totally incapacitated fathers, when the partially incapacitated fathers, although theoretically "capable of light work," are unable to obtain work because of a lack of skill and the realities of the job market. This presented a substantial constitutional question, for purposes of a federal district court's power to determine a related pendent claim not based on constitutional deprivation.
 
 
 10
 In Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) the Supreme Court considered almost the exact question that we face today was there a sufficiently substantial constitutional claim to support the lower court's exercise of pendent jurisdiction over a related statutory claim? Both Hagans and the instant case must be distinguished from Chapman, because in Chapman there was no constitutional claim at all. In Hagans, however, AFDC recipients in New York attacked a New York regulation (requiring recoupment of certain benefits) on two grounds: 1) that the New York regulation violated the Equal Protection Clause; and 2) that this same regulation was inconsistent with the Social Security Act and the regulations promulgated thereunder. The district court found the constitutional claim to be substantial and exercised pendent jurisdiction over the "statutory" claim. In order to avoid an unnecessary constitutional decision if possible, the district court examined the statutory claim first and enjoined the enforcement of the New York regulation on the ground that it conflicted with the federal regulations under the Social Security Act. On appeal, the court of appeals reversed the district court on the ground that the failure to present a substantial constitutional claim prevented the court from having jurisdiction over the statutory claim. After granting certiorari to consider the jurisdictional question, the Supreme Court held that the plaintiffs had presented a substantial constitutional claim, for purposes of federal jurisdiction, and that therefore the district court had jurisdiction to decide the statutory claim.
 
 
 11
 In Hagans the Supreme Court began by acknowledging the principle that a "substantial" federal question is necessary to support federal jurisdiction. "Over the years this Court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit,' . . . 'wholly insubstantial,' . . . 'obviously frivolous,' . . . 'plainly unsubstantial,' . . . or 'no longer open to discussion.' " 415 U.S. at 536-37, 94 S.Ct. at 1378-79 (citations omitted). However, the Court reversed the holding of the court of appeals, because, "(a)s was the case in Bell v. Hood (327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939), we cannot 'say that the cause of action alleged is so patently without merit as to justify . . . the court's dismissal for want of jurisdiction.' . . . Nor can we say that petitioners' claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court, whatever may be the ultimate resolution of the federal issues on the merits.' " Id. at 542-43, 94 S.Ct. at 1382 (citations omitted).
 
 
 12
 In light of the Hagans test, we are convinced that the plaintiffs' Equal Protection claim in their original complaint was a substantial constitutional claim sufficient to support the district court's exercise of pendent jurisdiction over the related statutory attack on the disability requirements. Texas's decision to deny AFDC benefits to needy children whose fathers' partial incapacity prevented them from obtaining an income sufficient to support their children, despite their being "capable of light work," is unquestionably not "so patently rational as to require no meaningful consideration." Hagans v. Lavine, 415 U.S. at 541, 94 S.Ct. at 1381. We therefore hold that the plaintiffs' original complaint presented a substantial constitutional question for purposes of permitting consideration by the federal district court of related pendent claims. See, e. g., Hagans v. Lavine, supra; Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).
 
 
 13
 (b) Were the Plaintiffs' Constitutional Claims No More Than Alleged Conflicts Between State and Federal Law?
 
 
 14
 The defendants contend that the plaintiffs can only claim that they have a right to AFDC benefits (even though they are "capable of light work" and even though their disability is expected to last for more than thirty days but less than sixty) by relying on rights originating from federal regulations. The defendants thus argue that the court had no jurisdiction over the plaintiffs' Equal Protection claims because these claims, allegedly based solely on rights arising from federal regulations, are in fact nothing more than claims that the Texas "capable of light work" and sixty-day eligibility requirements are in conflict with federal law. The defendants' analysis, however, evidences a misunderstanding of the nature of the protection afforded by the Equal Protection Clause of the Fourteenth Amendment. This "origin of the right" theory might be helpful in determining whether plaintiffs have been deprived of a "property" right without due process of law, but it has no relevance to the analysis of the plaintiffs' Equal Protection claims.
 
 
 15
 A state violates the Equal Protection Clause when it irrationally treats differently those similarly situated or when it irrationally treats similarly those people situated differently. See, e. g., Hagans, 415 U.S. at 538-39, 94 S.Ct. at 1380-81. See generally J. Nowak, R. Rotunda & J. Young, Constitutional Law 519-22 (1978). Aside from determining the level of scrutiny to be applied, id. at 522-27, there is no issue in an Equal Protection claim concerning the right of anyone to anything other than similar treatment of similar individuals. For purposes of Equal Protection, it is immaterial whether anyone had a federal right to AFDC benefits despite being "capable of light work" and despite having a disability with an anticipated duration of less than sixty days but more than thirty; the only issue is whether the state of Texas had a rational basis for its different treatment of those persons arguably similarly situated. Consequently, neither of the plaintiffs' Equal Protection claims was based on a conflict between state and federal law.[6]
 
 
 16
 We recognize that, as the defendants argue, the Hagans test may sometimes allow a plaintiff to sue in federal court on a claim that is stronger statutorily than constitutionally. The use of pendent jurisdiction in these cases may thus allow the federal courts to decide a statutory question instead of a constitutional one. However, we view Hagans and Rosado as permitting the federal courts in such instances to have the discretion to hear a pendent statutory question involving federal law and federal policy, rather than perforce to dismiss the claim and relegate it to a state forum.
 
 
 17
 In Hagans the Court said, "In none of these cases did the Court think that with jurisdiction fairly established, a federal court under Gibbs, must nevertheless decide the constitutional issue and avoid the statutory claim if, upon weighing the two claims, the statutory claim is strong and the constitutional claim weak. On the contrary, Mr. Justice Harlan, writing for the Court in Rosado v. Wyman, and with the principles of Gibbs well in mind, noted that the pendent statutory question was essentially one of federal policy and that the argument for the exercise of pendent jurisdiction was ' "particularly strong." ' " Hagans v. Lavine, 415 U.S. at 549-50, 94 S.Ct. at 1385 (citations omitted). We do not interpret Chapman as modifying either the principle of pendent jurisdiction or the principle that a federal court has jurisdiction unless a constitutional claim is wholly unsubstantial.
 
 II.
 
 18
 The defendants argue that even if the trial court had jurisdiction, the court lost jurisdiction when the challenge to the "capable of light work" requirement became moot. Furthermore, the defendants argue that since the plaintiffs had not been denied benefits as a result of the sixty-day eligibility requirement, they did not have standing to represent the class attack on said requirement.
 
 
 19
 (a) Did the Mootness of the Original Constitutional Claim Require a Dismissal of the Remaining Substantive Claim for Lack of Jurisdiction?
 
 
 20
 The plaintiffs' attack on the constitutionality of the Texas "capable of light work" requirement presented a substantial constitutional question, but, as noted previously, the revision of the Texas AFDC Handbook mooted the plaintiffs' attack on this requirement. By December 19, 1978, the date of the partial summary judgment for the plaintiffs, the only substantive attack that was not moot was the attack on the sixty-day eligibility requirement. We must consider whether the mootness of the plaintiffs' original constitutional claim deprived the court of all discretion as to whether to exercise jurisdiction over the remaining claim.
 
 
 21
 The fact that a substantial constitutional claim becomes moot during the litigation does not deprive the court of pendent jurisdiction over a related statutory claim. Rosado v. Wyman, 397 U.S 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). In Rosado the plaintiffs' Equal Protection attack against a New York AFDC regulation was rendered moot by an amendment to the regulation. However, after the three-judge court remanded to the single district judge, the district judge held that the regulation conflicted with the federal provisions, and he enjoined the use of the New York regulation. The court of appeals reversed this ruling; the district court was held to have lost jurisdiction to decide the statutory claim when the constitutional claim was rendered moot.
 
 
 22
 The Supreme Court granted certiorari and reversed the court of appeals on the ground that the district judge had properly exercised his discretion by proceeding to the merits. "We are not willing to defeat the commonsense policy of pendent jurisdiction the conservation of judicial energy and the avoidance of multiplicity of litigation by a conceptual approach that would require jurisdiction over the primary claim at all stages as a prerequisite to resolution of the pendent claim." 397 U.S. at 405, 90 S.Ct. at 1214 (footnote omitted).
 
 
 23
 In Rosado, the mooted constitutional claim concerned the identical statutory provision attacked on both constitutional and pended Supremacy Clause grounds. Here, distinguishably, the pended claim presently before us involves an attack on another facet of the disability standard that is very closely related to the mooted constitutional and statutory attack on the "capable of light work" facet. Both facets of the standard were attacked on Equal Protection grounds, as irrationally creating two classes of needy children. Both were likewise attacked on Supremacy Clause grounds, as inconsistent with federal regulation. There was a sufficient common nucleus of operative fact between the constitutional challenge to the light work requirement (as well as to the sixty-day eligibility requirement) on Equal Protection grounds and the pended Supremacy Clause attacks on the two facets of the disability standard. Either or both of these disability tests might apply to a welfare claimant so as either to prevent initial eligibility or else to terminate benefits once commenced.
 
 
 24
 Pendent jurisdiction exists, under the Gibbs test, when the jurisdictional and the pendent claim "derive from a common nucleus of operative fact" and the plaintiff's claims, if considered without regard to their jurisdictional character, "are such that he would ordinarily be expected to try them all in one judicial proceeding." 383 U.S. at 725, 86 S.Ct. at 1138. The constitutional claims relating to the invalidity of the light work requirement and to the invalidity of the sixty-day duration requirement as a basis for denying or terminating AFDC benefits, and the statutory claims (based on the Supremacy Clause) relating to the invalidity of these same two facets, were (to mix a metaphor) four intertwined strands of the same ball of wax. Further, as noted by Hagans (concerning similar constitutional and pended Supremacy Clause attacks on a state's AFDC regulation), another consideration militates against relegating the pendent claim to state court litigation: "(W)here the pendent claim is federal but is itself beyond the jurisdiction of the District Court . . . .(,) the federal court's rendition of federal law will be at least as surefooted and lasting as any judgment from the state courts." 415 U.S. at 550, 94 S.Ct. at 1385 (emphasis in original).
 
 
 25
 Accordingly, the mootness of the original constitutional claim did not deprive the judge of all discretion as to whether to exercise jurisdiction over the pendent claim and proceed to the merits.[7] See Rosado v. Wyman, 397 U.S. at 401, 90 S.Ct. at 1212.(b) Did the Judge Properly Exercise His Discretion by Proceeding to the Merits After the "Capable of Light Work" Challenge Had Become Moot?
 
 
 26
 Although the decision to exercise pendent jurisdiction over the statutory attack on the sixty-day eligibility requirement was discretionary, under the peculiar facts of this case, we are convinced that the judge should not have proceeded to the merits. In view of the combination of standing and mootness problems created by the mooting of the "capable of light work" challenge prior to certification of the class, the judge should not have exercised jurisdiction over the sixty-day eligibility challenge without the presence of a named plaintiff who had been directly injured by the challenged requirement.
 
 
 27
 Initially, the plaintiffs unquestionably had standing to attack the "capable of light work" standard; each plaintiff had been denied AFDC benefits when they were found to be "capable of light work." They attacked the disability standard as invalid in its entirety, however, and they sought to represent all persons who had been injured by this standard. Although they had been directly injured by only one facet of the challenged standard, they were subject to the entire standard and attacked the standard as a whole. Given the facts of this case and the intertwined nature of the facets of the challenged standard, see Part II(a), supra, the plaintiffs' suit presented a "case or controversy" within the meaning of Article III.
 
 
 28
 Nevertheless, despite the plaintiffs' initial standing to challenge the disability standard in its entirety, once their attack on the "capable of light work" requirement became moot, the judge should have reconsidered whether the named plaintiffs were still appropriate representatives of the class. The judge should have considered dividing the class into sub-classes under Rule 23(c)(4), Fed.R.Civ.Proc.,[8] and allowing intervention by another named plaintiff if necessary.
 
 
 29
 Had the court found that there was no named plaintiff who could represent the sub-class challenging the sixty-day eligibility period, the court could have considered "whether it (was) in the interest of justice and judicial economy to postpone dismissal as to the subclass for a specified period in which members of the subclass could become plaintiffs by amendment of the Complaint or by intervention and thereby save the subclass action." Johnson v. American Credit Company of Georgia, 581 F.2d 526, 533 n.13 (5th Cir. 1978). See Sullivan v. Winn-Dixie Greenville, Inc., 62 F.R.D. 370, 375-76 (D.S.C. 1974).[9]
 
 
 30
 If the class had been properly certified before the "capable of light work" challenge become moot, the class action would not necessarily have become moot.[10] However, no class certification hearing had as yet been held.[11] Furthermore, no such hearing was held until after every other issue in this litigation had been settled.[12]
 
 
 31
 Once the "capable of light work" challenge became moot and put the named plaintiffs' standing in question, the plaintiffs and the judge should have realized that intervention by another named plaintiff was appropriate. Nevertheless, it was the defendants' conduct that was largely responsible for this case being treated, without question, as a class action up until the very final moments. See note 12, supra. If the defendants had raised their objections to certification at the appropriate time, it would have been an easy matter for the judge to allow some time for another named plaintiff to intervene. See Johnson v. American Credit Company of Georgia, supra, 581 F.2d at 533 n.13.
 
 
 32
 This case must be remanded so that an appropriate named plaintiff may intervene. We do so reluctantly, in view of the defendants' culpability, see note 12, supra, but the peculiar circumstances of this case have convinced us that the judge exceeded his discretion by proceeding to the merits of the sixty-day challenge without the presence of a named plaintiff who had suffered direct injury from the application of that specific facet of the Texas disability standard.
 
 III.
 
 33
 The final issue in this case concerns the expense involved in preparing and mailing the proposed explanatory notice to the class. According to defendants' counsel, defendants intend to mail this notice by the end of July, 1980.
 
 
 34
 The description of the class as certified by the district court essentially tracked the description that had been proposed by plaintiffs throughout the litigation, and it conformed to the class description that had been approved by all parties on June 28, 1979. In the district court's final judgment on July 3, 1979, the class was certified and described as follows:
 
 
 35
 All Texas residents who on or after October 3, 1976, for reasons of physical or mental incapacity are or were unable to support their minor children, and who have received, or are receiving, or may receive monthly AFDC-I benefits and who have had benefits terminated or have had applications for AFDC-I benefits rejected as a result of having their claims evaluated under the improper disability standard of §§ 2830, 2832 and 2833 of the AFDC Handbook, Texas Department of Human Resources.
 
 
 36
 The district court also ordered the defendants to mail the following explanatory notice, which had also been approved by all parties on June 28, 1979:
 
 
 37
 The United States District Court for the Southern District of Texas, Brownsville Division, has ruled that the disability standard under which your application or claim for AFDC-I benefits may have been evaluated, did not conform to federal standards. The Texas AFDC-I standard has now been changed. If you desire, you may file a new application for AFDC-I benefits. Your evaluation will be evaluated under the new standard. To file your application or to obtain further information, please contact your local office of the Texas Department of Human Resources.
 
 
 38
 The defendants now contend that since they objected to the cost of preparing and mailing this explanatory notice, the Eleventh Amendment immunizes them from being forced to incur such expense. We disagree.
 
 
 39
 Preliminarily, we note that by virtue of our decision to remand this case and to vacate the judge's ruling that the sixty-day eligibility requirement is unconstitutional, the defendants are entitled not to send a notice to anyone who was injured by this facet of the Texas disability standard. However, the plaintiffs are still entitled to have an appropriate notice sent to all class members who have been denied benefits because they were capable of light work;[13] the plaintiffs have at all times remained proper representatives of this sub-class. Since the plaintiffs are entitled to this notice, we must rule on the defendants' objection to the cost involved.
 
 
 40
 In arguing that the Eleventh Amendment[14] prohibits a federal court from ordering a state to pay for an explanatory notice when the state objects to the cost of such notice, the defendants principally rely on the Supreme Court's qualification in Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), that the defendants had not objected to the cost of a similar explanatory notice. In addition, defendants rely on a similar caveat in Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), to the effect that there had been no objection by the defendants that the award of attorney's fees was "so large or unexpected that it interfered with the State's budgeting process." 98 S.Ct. at 2574 n.18. We think that the defendants misunderstand the import of these caveats, and, in any event, the defendants failed to present an adequate factual basis for their objection.
 
 
 41
 In Quern v. Jordan, the Seventh Circuit Court of Appeals authorized an explanatory notice to class members that was very similar to that ordered in the present case. At issue in Quern was whether "the modified notice contemplated by the Seventh Circuit constitute(d) permissible prospective relief or a 'retroactive award which requires the payment of funds from the state treasury.' " 99 S.Ct. at 1147-48. The Court answered the question by saying:
 
 
 42
 We think this relief falls on the Ex parte Young (209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714) side of the Eleventh Amendment line rather than on the Edelman (v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662) side. . . .
 
 
 43
 The notice approved by the Court of Appeals, unlike that ordered by the District Court, is more properly viewed as ancillary to the prospective relief already ordered by the court. See Milliken v. Bradley, 433 U.S. (267) at 290, 97 S.Ct. (2749) at 2762 (53 L.Ed.2d 745). The notice in effect simply informs class members that their federal suit is at an end, that the federal court can provide them with no further relief, and that there are existing state administrative remedies which they may wish to pursue. 99 S.Ct. at 1148, 1149.
 
 
 44
 Quern makes it clear that the type of notice ordered in the instant case is only ancillary relief. Therefore, the only issue is whether the defendants' objection to the cost of the notice is sufficient to distinguish this case from Quern.
 
 
 45
 The defendants rely on the following statements in Quern : "Petitioners make no issue of the incidental administrative expense connected with preparing and mailing the notice," 99 S.Ct. at 1148; and in Hutto v. Finney : "The Attorney General has not argued that this award was so large or so unexpected that it interfered with the State's budgeting process. Although the Eleventh Amendment does not prohibit attorney's fees awards for bad faith, it may counsel moderation in determining the size of the award or in giving the State time to adjust its budget before paying the full amount of the fee," 98 S.Ct. at 2574 n.18. The defendants argue on appeal that the cost of the notice in the instant case would be almost $80,000, and they thus argue that Quern and Hutto do not authorize the district court to make them pay for the notice.
 
 
 46
 An examination of one of the cases cited in both these opinions will illustrate that the amount of the cost of the notice is not dispositive. In Quern the Court cited Milliken v. Bradley, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977), in connection with its determination that the explanatory notice in Quern was only "ancillary to the prospective relief already ordered by the district court." In Milliken the petitioners had argued that "the requirement that the state defendants pay one-half the additional costs attributable to the four educational components is, 'in practical effect, indistinguishable from an award of money damages against the state based upon the asserted prior misconduct of state officials.' " 433 U.S. at 288-89, 97 S.Ct. at 2761. However, the Court responded:
 
 
 47
 The decree to share the future costs of educational components in this case fits squarely within the prospective-compliance exception reaffirmed by Edelman. That exception, which had its genesis in Ex parte Young, permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury. Id. at 289, 97 S.Ct. at 2762 (citations omitted) (emphasis added).
 
 
 48
 The Court also referred to Milliken in Hutto v. Finney. " 'Ancillary' costs may be very large indeed. Last Term, for example, this Court rejected an Eleventh Amendment defense and approved an injunction ordering a State to pay almost $6 million to help defray the costs of desegregating the Detroit school system. Milliken v. Bradley, 433 U.S. 267, 293, 97 S.Ct. 2749, 2763, 53 L.Ed.2d 745 (Powell, J., dissenting)." Hutto v. Finney, 98 S.Ct. at 2573-74 n.15. The Court's citation of Milliken in both Quern and Hutto illustrates that it is the character of an expense, whether "ancillary" or not, rather than the amount, that is determinative as to whether there is an Eleventh Amendment issue.[15]
 
 
 49
 Quern, Hutto, and Milliken indicate that the defendants in this case can be required to pay for the notice to this class. The notice to this class is well within the prospective-compliance exception referred to in Milliken, and the bald assertion that it will cost too much is insufficient to invoke the proscriptions of the Eleventh Amendment.
 
 
 50
 We have been informed by defendants' counsel that the original proposed notice to the class was to be mailed by the end of July 1980.[16] Since the defendants now have the right to modify the proposed notice, the district court may allow the defendants until September 30, 1980 to have a revised notice, concerning only the "capable of light work" requirement, sent to the members of the class. If by that time no decision has been reached concerning the unconstitutionality of the sixty-day eligibility requirement, then the revised notice must be sent. A second notice, concerning the sixty-day requirement, may be sent later if necessary.
 
 
 51
 In view of the possibility of a second explanatory notice, we will address the defendants' contention that the difficulties involved in notifying the class members outweigh any benefits that the class members might receive. This argument is premised on the contention that no one who was denied benefits under the sixty-day eligibility requirement is now likely to be able to qualify under the thirty-day eligibility requirement. We find this argument to be utterly without merit. If the defendants had timely raised their objections to certification, then these objections could have been resolved by allowing another named plaintiff to intervene. If that had happened, then a single notice, as originally anticipated, could now be mailed, not only to those denied benefits under the sixty-day eligibility requirement, but also to those denied benefits because they were "capable of light work." Numbers of these latter persons would presumably be able to qualify under the new incapacity standard.[17] The defendants' failure to object has necessitated a remand in this case, and they cannot now contend that they should be relieved of the possible obligation to notify those persons aggrieved by the sixty-day eligibility requirement as a result of their own questionable litigation tactics. See note 12, supra.
 
 
 52
 The defendants have contested this litigation at every stage over the past five years without ever raising any substantive defense to the plaintiffs' contention that the disability standard is both unconstitutional and inconsistent with federal law. We find no merit to their contentions that the Eleventh Amendment protects them from paying for an explanatory notice to the class or that the administrative costs of preparing and mailing such a notice outweigh the possible benefits to the class.Conclusion
 
 
 53
 The district judge had jurisdiction, but once the challenge to the "capable of light work" requirement became moot, he should have created sub-classes and allowed time for the intervention of a named plaintiff with standing to represent the sub-class challenging the sixty-day eligibility requirement. Consequently, we vacate that portion of the judge's decision holding the sixty-day eligibility requirement unconstitutional and remand for further proceedings consistent with this opinion. We affirm that portion of the judge's ruling that requires the defendants to bear the expense of preparing and mailing an explanatory notice to the class, but we remand for a modification of this notice. In the event that the district court orders any additional notice concerning the sixty-day eligibility requirement, the defendants must bear the expense of preparing and mailing that notice as well.
 
 
 54
 AFFIRMED AND MODIFIED IN PART, AND VACATED AND REMANDED IN PART.
 
 
 55
 TJOFLAT, Circuit Judge, concurring and dissenting:
 
 
 56
 The majority opinion struggles valiantly to make sense out of a muddled record of proceedings in the district court. I agree with the majority that the challenge to the "capable of light work" requirement is moot and that the case must be remanded to the district court "so that an appropriate named plaintiff may intervene," ante at page 650, to pursue the attack on the sixty-day disability standard. If a plaintiff with proper standing should appear, the district court will then have the task of reassessing its jurisdiction. The court may properly find that it has jurisdiction pendent to its jurisdiction over the now moot challenge to the "capable of light work" standard only if the new plaintiff can show that his claims and the claims that have been mooted derive from a "common nucleus of operative fact." Of course, it will also be open to the new named plaintiff to argue that equal protection and due process objections to the sixty-day disability standard are sufficiently substantial to give the court pendent jurisdiction to entertain the claim that the disability standard offends the supremacy clause.[1]
 
 
 57
 I cannot concur with the majority's approval of the district court's order requiring the defendants to bear the expense of preparing and mailing the explanatory notice to all class plaintiffs who have been denied AFDC benefits under the "capable of light work" standard. Ordinarily, a court has no power to grant relief, even equitable relief, once the claim for relief has become moot. The obvious reason is that an order granting relief may only follow a determination of liability; there can be no such determination where the claim is mooted.
 
 
 58
 Rule 23 of the Federal Rules of Civil Procedure gives a court extraordinary powers that may sometimes qualify the general rule, however. Rule 23(d)(2) provides that a court conducting a class action may make "appropriate orders . . . requiring for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action . . .." Arguably, this rule empowered the district court to order the defendants to bear the expense of the explanatory notice concerning the elimination of the "capable of light work" standard. The court's discretion under the rule is limited by the requirement that the order be "appropriate." For meaningful appellate review of an exercise of discretion pursuant to the rule to be possible, the district court must explain why it has found such action "appropriate." Moreover, the explanation must be based on findings of fact. Since the district court did not explain the basis of its order in the present case, the order should be reversed and remanded to give the court an opportunity to do so.
 
 
 
 [1]
 28 U.S.C. § 1343 provides:
 The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
 (1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;
 (2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;
 (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
 (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.
 
 
 [2]
 42 U.S.C. § 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.
 
 
 [3]
 In Chapman, the Supreme Court held that there is no jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 1983 to hear a case claiming that a state law conflicts with the Social Security Act because: 1) an alleged violation of the Supremacy Clause "does not, in itself, give rise to a claim 'secured by the Constitution' within the meaning of (28 U.S.C.) § 1343(3)," 99 S.Ct. at 1915; and 2) the Social Security Act is not a statute providing for "equal rights" within the meaning of § 1343(3) or "civil rights" within the meaning of § 1343(4), id. 99 S.Ct. at 1917-18
 
 
 [4]
 There was no federal question jurisdiction under 28 U.S.C. § 1331 over the Supremacy Clause claim because the plaintiffs lacked the requisite $10,000 jurisdictional amount. Although there were several alleged bases for jurisdiction in the complaint, plaintiffs now rely solely on 28 U.S.C. § 1343 and 42 U.S.C. § 1983 and pendent jurisdiction
 
 
 [5]
 The issue of pending a statutory claim with a substantial constitutional claim was not considered in Chapman because no constitutional claim, aside from the Supremacy Clause claim, was at issue. However, such an exercise of pendent jurisdiction has been used in several other cases, e. g., Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970)
 
 
 [6]
 We do not dispute that the plaintiffs may have obtained some of their ideas about rationality from the approach taken by federal law. However, this does not deprive them of the right to try to prove that Texas law irrationally treats persons unequally
 
 
 [7]
 Our finding that the judge had discretion does not necessarily mean that this discretion was properly exercised. See Part II(b), infra
 
 
 [8]
 Rule 23(c)(4), Fed.R.Civ.Proc., provides, "When appropriate . . . a class may be divided into sub-classes and each sub-class treated as a class, and the provisions of this rule shall then be construed and applied accordingly."
 
 
 [9]
 In Sullivan the defendants objected to the class and argued that, if anything, there were discernable sub-classes. The district court agreed that the class was too broad, but it allowed sixty days for other individuals to intervene to represent the sub-class that the named plaintiffs were found inadequate to represent. Cf. Class Action-Mootness of Claim, 33 A.L.R.Fed. 484, 519-20 (1977), discussing cases that have allowed other class members to intervene when the named plaintiff's claim became moot
 
 
 [10]
 In particular types of class actions (the Supreme Court) has held that the presence of a properly certified class may provide an added dimension to (the) Art(icle) III analysis, and that the mootness of the named plaintiffs' claims does not "inexorably" require dismissal of the action
 Kremens v. Bartley, 431 U.S. 119, 129-30, 97 S.Ct. 1709, 1715, 52 L.Ed.2d 184 (1977), citing Sosna v. Iowa, 419 U.S. 393, 399-401, 95 S.Ct. 553, 557-58, 42 L.Ed.2d 532 (1975), and also citing Franks v. Bowman Transportation Co., Inc., 424 U.S. 747, 752-57, 96 S.Ct. 1251, 1258-60, 47 L.Ed.2d 444 (1976), and Gerstein v. Pugh, 420 U.S. 103, 110-11 n.11, 95 S.Ct. 854, 861 n.11, 43 L.Ed.2d 54 (1975).
 Kremens distinguished these prior cases and remanded for substitution of class representatives with live claims; the intervening legislation that had mooted the named plaintiffs' claims had left the class so extremely fragmented "that the claims of the unnamed class members (were) not properly presented for review." 431 U.S. at 127, 97 S.Ct. at 1714. Although there are many similarities between the instant case and Kremens, there are also several differences. (For example, although one whole portion of the class action in the instant case was mooted by a revision of the regulations, the remaining claims were not fragmented and the challenge to the sixty-day requirement was arguably one that was "capable of repetition, yet evading review." See Kremens v. Bartley, supra, 431 U.S. at 133, 97 S.Ct. at 1717.) Consequently, although the combination of the questions concerning both standing and mootness in the instant case requires us to remand, we note that were the problem one of mootness only, the rationale of Kremens might require a different result.
 
 
 [11]
 Under Rule 23(c)(1), Fed.R.Civ.Proc., "(a)s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." However, although the plaintiffs immediately moved for class certification, their motion was held in abeyance, apparently pending settlement negotiations. See Appendix (History of the Litigation ). Eventually, plaintiffs again moved for certification of the class, but the "capable of light work" challenge became moot soon thereafter. Nevertheless, even after this challenge had become moot it might have been possible to salvage this litigation had it not been for the questionable conduct of the defendants. See note 12, infra. For a discussion of the problems created by the failure to immediately hold a certification hearing, see Satterwhite v. City of Greenville, 578 F.2d 987, 998-99 (5th Cir. 1978) (en banc), vacated and remanded, --- U.S. ----, 100 S.Ct. 1334, 63 L.Ed.2d 773 (1980)
 
 
 [12]
 As can be seen from the Appendix (History of the Litigation ), the defendants made no objection to certification of the class until almost three and one-half years after suit was filed and almost one year after the "capable of light work" challenge became moot. In fact, after this challenge had become moot and the plaintiffs had again moved for certification, the defendants responded: "Assuming Plaintiff(s') Class Certification Motion is in proper order, Defendants have no objection to such certification, following an appropriate brief hearing before the Court." Although this statement was somewhat equivocal, it certainly did not alert either the plaintiffs or the judge to the possibility that the defendants would vigorously oppose certification almost one year later
 
 
 [13]
 Our brother TJOFLAT is concerned that the district judge assigned no reasons for his conclusion that it was appropriate to require the defendants to pay for an explanatory notice concerning the elimination of the "capable of light work" requirement. However, at the time, the district judge was ruling on the appropriateness of a notice to the entire class. It is only in view of our remand with respect to the sixty-day disability requirement that the defendants are entitled to a more limited notice. Nevertheless, it is appropriate to order a more narrow notice concerning only the "capable of light work" requirement, first requested in the plaintiffs' original petition. The plaintiffs' claim for a notice to the class was not mooted by the revision of the regulations, any more than a claim for pre-revision damages would have been. Furthermore, the defendants have never raised this issue. This case has been pending over four and one-half years, and, as the opinion points out, even those class action issues presently before us were injected belatedly; a remand for reasons would almost inevitably entail another appeal. In view of these circumstances, we act on the record as presented to us
 
 
 [14]
 The Eleventh Amendment states:
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 
 
 [15]
 Even if cost were a relevant factor, there has been no indication by the defendants that the cost of the notice will, in the words of Hutto, interfere with "the State's budgeting process," 98 S.Ct. at 2574 n.18, except for an unsupported assertion in the defendants' brief that "payment for class notice from the budget of the Texas Department of Human Resources would add an additional burden to an administrative agency struggling to cope with the demands of needy welfare recipients." Defendants-Appellants' Brief at 16. Pretermitting for the moment the defendants' lack of proof of any significantly detrimental impact on either the budget of Texas as a whole or the budget of the Texas Department of Human Resources, we note that Hutto speaks of an impact on a state's budget, not the budget of a single administrative agency
 
 
 [16]
 We have not been informed as to why the notice was not mailed sooner in view of the fact that the defendants' motion for a stay pending appeal was denied by this court on November 1, 1979
 
 
 [17]
 Although the revised disability definition has done away with the "capable of light work standard," the revised version did not go into effect until the latter part of 1978, and the notice was to be sent to all welfare applicants who have been denied benefits since October 3, 1976. Consequently, all applicants who were denied benefits between October of 1976 and the latter part of 1978 on the ground that they were "capable of light work" will receive notice that they can now reapply under the new standard
 APPENDIX19
 History of the Litigation
 On December 10, 1975, the plaintiffs filed their complaint and a motion for a preliminary injunction. Although there was some language in the complaint that generally attacked the Texas incapacity standard as being inconsistent with the Social Security Act, 42 U.S.C. §§ 601 et seq., and as being in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, there were basically two specific contentions: 1) that the incapacity standard of sections 2832 and 2833 of the Texas AFDC Handbook, Texas Department of Public Welfare, conflicted with the Social Security Act (and the regulations thereunder) and violated Due Process and Equal Protection because these sections required an applicant to be incapable "of light work"; and 2) that the failure to provide an adequate hearing when either rejecting or terminating applications also conflicted with the Social Security Act (and the regulations thereunder) and violated the Due Process Clause of the Fourteenth Amendment. In their complaint, both plaintiffs alleged that they had had AFDC benefits denied or terminated because they had been found to be "capable of light work." The complaint alleged that the plaintiffs represented the class of people who had been improperly denied benefits under the illegal standard, and jurisdiction was said to be based, inter alia,[1] on 42 U.S.C. § 1983 and 28 U.S.C. § 1343.
 
 
 [1]
 The complaint also alleged jurisdiction under 28 U.S.C. §§ 1331 (general federal question) and 1337 (laws regulating trade or commerce), but the plaintiffs no longer contend that these statutes provided the court with jurisdiction
 During the two and one-half years following the filing of the complaint, the litigation failed to move forward. The defendants filed an answer and the plaintiffs filed a motion to have the action declared a class action, but on August 23, 1976, all motions were held in abeyance by consent of all parties pending settlement negotiations. The deadline for the agreement to hold everything in abeyance, December 1, 1976, came and went, and the court heard nothing from the parties. On September 26, 1977, the court ordered the plaintiffs to inform it of the status of the case or else the case would be dismissed for want of prosecution. When no response was received, the court dismissed the case without prejudice, but the plaintiffs filed a motion to reinstate the case, and on January 30, 1978, the case was reinstated.
 Once the case was reinstated, the litigation began to move more rapidly. On May 1, 1978, the plaintiffs filed an amended motion for preliminary injunction and a motion for summary judgment. In the amended motion for a preliminary injunction, the plaintiffs directly attacked the Texas standard of eligibility as a whole. Along with challenging the "capable of light work" standard, this amended motion also attacked the Texas requirement that in order for an applicant to be eligible for benefits, the incapacity must be expected to last for two months. This requirement was attacked as being in direct conflict with the Social Security regulation that only required the incapacity to last thirty days, 45 C.F.R. §§ 233.90(b)(6) and (c)(1)(iv). In the motion for summary judgment, the plaintiffs renewed their attack on the "capable of light work" standard, and they also requested the court to rule that the two month incapacity requirement was in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment as well as in conflict with the Social Security Act (and its accompanying regulations). The request that their action be maintained as a class action was also renewed.
 On May 11, 1978, the plaintiffs filed a memorandum in support of their motion for summary judgment. In this memorandum they primarily argued that the Texas regulations were inconsistent with the Social Security Act (and the pertinent regulations) and, therefore, that the Texas regulations violated the Supremacy Clause of the United States Constitution. On the same day that this memorandum was filed, the parties filed certain stipulations that acknowledged the anticipated revision of the Texas AFDC Handbook and the fact that this revision would satisfy all but one of the plaintiffs' objections. Therefore, the only substantive issue remaining for the court to decide was whether either the two month standard of section 2832 or the sixty-day standard of the proposed revised section 2830 was in conflict with the Social Security Act or its regulations.
 On May 26, 1978, the defendants filed their opposition to the plaintiffs' motions for summary judgment and preliminary injunction. The defendants stated that the only issue left was whether Texas' sixty-day eligibility period was invalid, and they filed a motion to stay the proceedings based on their desire to pursue conformity proceedings with the Department of Health, Education and Welfare. The defendants also stated, "Assuming Plaintiff(s') Class Certification Motion is in proper order, Defendants have no objection to such certification, following an appropriate brief hearing before the Court." On July 5, 1978, the plaintiffs filed an opposition to the motion to stay in which they argued that several of their claims were not moot because the issues of injunctive relief and retroactive benefits remained viable along with their attack on the sixty-day eligibility standard.
 On December 19, 1978, three years after suit had been filed, the trial judge granted partial summary judgment for the plaintiffs. The plaintiffs' request for retroactive benefits was denied, but the court held that the sixty-day standard was inconsistent with the Social Security Act (and its regulations) and enjoined Texas from using the invalid standard. The trial judge denied the defendants' motion to stay, but he deferred his ruling on, inter alia, the existence of a class.
 Followin an unopposed motion for continuance by the defendants, an oral hearing on all pending motions was scheduled for April 26, 1979. At this hearing, the defendants for the first time filed a motion to dismiss the case for lack of jurisdiction. The defendants contended that 42 U.S.C. § 1983 and 28 U.S.C. § 1343 were an insufficient basis for jurisdiction where the only substantial claim was that a state law was inconsistent with a federal law and therefore was invalid under the Supremacy Clause. The defendants pointed out that the Supreme Court had just heard argument on the precise point, but the trial court denied the motion to dismiss.
 With respect to class certification, the defendants for the first time objected that the plaintiffs were not adequate representatives of the class because they had not been denied benefits because of the sixty-day eligibility period but rather because they were "capable of light work." However, the judge felt that this argument lacked merit, and he certified the case as a class action. With respect to notice to the class, the court ordered the defendants to send out an explanatory notice consistent with Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), but the defendants objected for the first time to the cost of preparing and mailing such a notice. Defense counsel stated that she expected to receive information on how many people the defendants would be able to notify and on how much it would cost, and the court set a hearing for June 22, 1979 to determine the wording of the description of the class, the number of people in the class, and the wording and cost of an explanatory notice.
 On June 1, 1979, plaintiffs filed a proposed class description for class certification and a proposed notice. On the same day, defendants filed a motion for a rehearing on their motion to dismiss on the basis of the Supreme Court's decision in Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). The court agreed to hear the defendants' motion for rehearing at the upcoming hearing.
 On June 22, 1979, more than three and one-half years after the filing of the complaint, the final hearing in this case was held. After extensive argument concerning the effect of Chapman v. Houston Welfare Rights Organization on the motion to dismiss for lack of jurisdiction, the trial judge ruled that Chapman did not mean that he was deprived of jurisdiction. He stated that he would write a supplemental memorandum opinion fully outlining his reasoning. Further, at a conference in the judge's chambers, the parties apparently agreed on the notice that was to be sent to the class, and the judge ordered them to submit the agreed-upon notice to the court as soon as possible.
 On June 28, 1979, the parties submitted a class description and a proposed notice that had been agreed upon by both sides. On July 3, 1979, this class description and notice were incorporated in the trial court's final judgment. On the same day, the judge filed a memorandum opinion explaining that the motion to dismiss would be denied because Chapman had not overruled the principle that a purely statutory claim could be pended to a substantial constitutional claim. Since the trial judge felt that the plaintiffs' constitutional claims had been substantial, he held that he had pendent jurisdiction to decide the statutory claims, despite the fact that some of the constitutional claims had become moot during the pendency of the litigation.
 
 
 [1]
 The majority mentions the equal protection and due process challenges to the sixty day disability standard, ante at page 648 and 654, but apparently assumes that these claims were not "substantial." It does not appear, however, that the district court ever ruled on the substantiality of the claims. The court should consider itself free to do so on remand