**Hessie ANDERSON and Frankie Martin, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,**

v.

**Richard LYNG, Secretary of the United States Department of Agriculture, and Andrew P. Hornsby, Commissioner of the Alabama Department of Pensions and Security, Defendants.**

Civ. A. No. 85–T–1350–N.

United States District Court,
M.D. Alabama, N.D.

Jan. 28, 1987.

On Motion to Require Adherence
Jan. 29, 1987.

Lawrence Gardella, Legal Services Corp. of Alabama, Montgomery, Ala., Geraldine Turner-Wofford, Legal Services Corp. of Alabama, Selma, Ala., for plaintiffs.

John C. Bell, U.S. Atty., D. Broward Segrest, Asst. U.S. Atty., Montgomery, Ala., for defendant Lyng.

James Long, Alabama Dept. of Pensions & Sec., Div. of Legal Services, Montgomery, Ala., for defendant Hornsby.

## ORDER

MYRON H. THOMPSON, District Judge.

This court now revisits the plaintiffs' successful challenge to the "voluntary quit" regulation promulgated by the Secretary of the U.S. Department of Agriculture under the Food Stamp Act, 7 U.S.C.A. §§ 2011–2029. The court previously issued an order declaring that the Secretary's regulation impermissibly conflicted with the Food Stamp Act and the court later issued an injunction prohibiting the Secretary and the Commissioner of the Alabama Department of Pensions and Security from implementing the regulation in Alabama to the extent the regulation conflicted with the Act. *See Anderson v. Lyng,* 644 F.Supp. 1372 (M.D.Ala.1986).

This cause is now before the court on the following question: whether the Commissioner of the Department of Pensions and Security may be required to send an explanatory notice to plaintiff class members advising them, among other things, that there are state administrative procedures available by which they may receive a determination of whether they are entitled to past food stamp benefits. For reasons that follow, the court concludes that the answer is yes.

## I.

The Food Stamp Act provides that an entire household is ineligible to participate in a state food stamp program for 90 days if the "head of household" voluntarily quits any job without good cause. 7 U.S.C.A. § 2015(d)(1)(B)(ii). Pursuant to this statutory provision, the Secretary promulgated a regulation substituting the term "primary wage earner" for "head of household," and providing that a household is ineligible if the primary wage earner voluntarily quits any job without good cause. 7 C.F.R. § 273.7(n).

On September 11, 1986, this court entered an order declaring that the Secretary's voluntary quit regulation impermissibly conflicts with the Food Stamp Act. *Anderson,* 644 F.Supp. at 1381. The court found that the regulation's use of the term primary wage earner was "in direct conflict with the plain, common-sense and historical definition of head of household." *Id.,* at 1378. Later, on September 26, 1986, by agreement of the parties, this court issued another order declaring that "the plaintiffs are entitled to prospective injunctive relief," *id.,* at 1381, and prohibiting the Secretary of the U.S. Department of Agriculture and the Commissioner of the Alabama Department of Pensions and Security, effective September 11, 1986, from disqualifying any household if the household's primary wage earner, but not the household head, voluntarily quits a job without good cause. *Id.*

Finally, on January 28, 1987, in tandem with the instant order, the court has issued an order certifying a plaintiff class of "Alabama residents whose households were or will be improperly terminated from the food stamp program based upon the voluntary quit of a household member who is not the head of household." While this cause was filed as a class action, all parties "agreed for the court to delay reaching the class certification issue until after the issue of liability had been determined." *Id.,* at 1372 n. 1. This agreement was based on an understanding among all parties, reached at an in-chambers conference with the court, that the class, if certified, would not in any manner be prejudiced by the delay. The court will therefore treat the plaintiff class as if it had been certified at the beginning of this lawsuit, prior to any determinations by the court of the issues of liability and relief.

## II.

Rule 23(d)(2) of the Federal Rules of Civil Procedure provides that a court may require appropriate notice "for the protection of the members of the class or otherwise for the fair conduct of the action." Relying on this rule, the plaintiffs ask that this court require the Commissioner of the Alabama Department of Pensions and Security to inform present class members of the nature and extent of their victory in this lawsuit and of the existence of state administrative remedies they may wish to pursue to obtain restoration of any past benefits that may have been wrongfully denied.

The Commissioner contends that requiring such notice would run afoul of the eleventh amendment to the U.S. Constitution. The court disagrees.

### A.

*Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), is on all fours with the present case. In *Quern,* the Supreme Court expressly held that federal courts could require, as a part of prospective relief, that state officials provide notice to class members informing them of the nature and extent of the class's victory in court and of the existence of state ad-

ministrative procedures which the class members may wish to pursue to obtain past benefits. *Id.*, at 349, 99 S.Ct. at 1149. The *Quern* Court reaffirmed that, although the eleventh amendment barred any retrospective injunction requiring state officials to pay retroactive benefits from the state treasury, *id.*, at 337, 99 S.Ct. at 1143, *citing Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the amendment did not prevent federal courts from granting prospective injunctive relief requiring that state officials conform their future conduct to the requirements of federal law. *Quern*, 440 U.S. at 337, 99 S.Ct. at 1143, *citing Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Relying on this distinction, the *Quern* Court then characterized the notice sought there "as ancillary to the prospective relief already ordered by the court." *Id.*, at 349, 99 S.Ct. at 1149.

### B.

The Commissioner of the Alabama Department of Pensions and Security proffers a number of arguments as to why the notice sought by the plaintiffs here is not in keeping with *Quern*. First, quoting from *Green v. Mansour*, 474 U.S. 64, ——, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985), the Commissioner maintains that requiring the notice would have "the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment." The Commissioner's reliance on *Green* is misplaced.

In *Green*, the facts were that, after a federal lawsuit was filed against a state official but before liability was determined and relief afforded, state officials permanently revised their conduct to comply with federal law. The Court then held that, where there was no claimed continuing violation and thus no need for prospective relief, "the issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the

federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment." *Id.* Here, in contrast, the propriety of declaratory and prospective injunctive relief has not been challenged; indeed, the Commissioner expressly agreed to the propriety of prospective injunctive relief and, thereby, by implication, the propriety of the declaratory relief upon which the injunctive relief was based.

But more importantly, the Supreme Court in *Quern* expressly rejected the argument that giving notice of the type sought by the plaintiffs here "will lead inexorably to the payment of state funds for retroactive benefits and therefore it, in effect, amounts to a monetary award." *Quern*, 440 U.S. at 347, 99 S.Ct. at 1148. The Court wrote that "the chain of causation which [the state official] seeks to establish is by no means unbroken; it contains numerous missing links, which can be supplied, if at all, only by the State and members of the plaintiff class and not by a federal court." *Id.*, at 347, 99 S.Ct. at 1148–49. The Court then explained that

> The mere sending of that notice does not trigger the state administrative machinery. Whether a recipient of notice decides to take advantage of those available state procedures is left completely to the discretion of that particular class member; the federal court plays no role in that decision. And whether or not the class member will receive retroactive benefits rests entirely with the State, its agencies, courts, and legislature, not with the federal court.

*Id.*, at 348, 99 S.Ct. at 1149 (footnote omitted).

The Commissioner contends also that the "high costs" of the notice sought by the plaintiffs distinguishes this case from *Quern*. The Commissioner argues that such high costs cannot be characterized as merely ancillary to the court's prospective injunction. The court disagrees. Whether the costs are high is immaterial; "it is the *character* of an expense, ... rather than the *amount*, that is determinative as to whether there is an Eleventh Amendment

issue." *Silva v. Vowell,* 621 F.2d 640, 652–653 (5th Cir.1980), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 941, 67 L.Ed.2d 111 (1981) (emphasis added and footnote omitted).* In *Quern* the Court wrote that "notice relief does not constitute a money judgment," 440 U.S. at 348 n. 20, 99 S.Ct. at 1149 n. 20; and in *Green,* the Court explained that notice relief was not "an independent form of relief," —— U.S. at ——, 106 S.Ct. at 427, but could only be ancillary to other relief. *Id.* Similarly, in *Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) and *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), the Court ordered extensive injunctive relief against state officials without an eleventh amendment waiver, despite the high price the relief would exact upon the state treasury. The Court implicitly recognized in those cases that the mere fact that relief is costly does not mean it is not ancillary. " 'Ancillary' costs may be very large indeed," the Court wrote in *Hutto.* 437 U.S. at 690 n. 15, 98 S.Ct. at 2573, n. 15.

Moreover, the court is convinced that the Commissioner has exaggerated the costs the requested notice would impose on the state. In their response to the Commissioner's claim, the plaintiffs have suggested various alternatives for giving notice, some of which it appears would be relatively inexpensive.

Finally, the Commissioner contends that the notice relief requested by the plaintiffs should be restricted by various statutes of limitations on back benefits. The parties hotly dispute which statute of limitations the court should apply. *See, e.g.,* 7 U.S.C.A. § 2023(b) (setting time period for which wrongfully denied or withheld food stamp benefits may be restored); *Jones v. Preuit & Maudlin,* 763 F.2d 1250 (11th Cir.1985) (discussing applicable statute of limitation for § 1983 cases in Alabama), *cert. denied,* —— U.S. ——, 106 S.Ct. 893, 88 L.Ed.2d 926 (1986). Any restrictions on

whether class members may recover back benefits and how far back they may recover should not be a restraint on to whom the Commissioner should give notice. The purpose of the notice is not only to inform class members of procedures for pursuing back benefits, but to inform *all* class members of the nature and extent of their victory in this court.

Accordingly, for the above reasons, it is the ORDER, JUDGMENT, and DECREE of the court that:

(1) Defendant Commissioner of the Alabama Department of Pensions and Security is ENJOINED and RESTRAINED from failing to give to the plaintiff class, notice informing them of the nature and extent of their victory in this court and of state procedures by which they may receive determinations of eligibility for past benefits; and

(2) The parties are to submit, within seven days from this date, a joint proposal detailing the content of the proposed notice and the means by which the notice is to be given.

### ON MOTION TO REQUIRE ADHERENCE

This cause is again before the court on the plaintiffs' October 24, 1986, motion to require defendants to adhere to the court's declaration of the relevant law when making "fair hearing decisions" regarding voluntary quits. For reasons that follow, the motion should be granted.

Although the court's injunction in this case prohibits the Commissioner of the Alabama Department of Pensions and Security from disqualifying any household after September 11, 1986, on the basis of the conduct of the primary wage earner rather than that of the head of household, it appears that since September 11 the Commissioner has issued a number of "fair hearing decisions" tying disqualifications to the conduct of the primary wage earner. The

---

* Admittedly, *Green v. Mansour* disapproved the *Silva* decision as to its provision of notice relief where there was no prospective injunctive relief. It did not reflect upon its holding as to the costs of notice.

Commissioner admits that, in those cases where households have been disqualified prior to September 11 pending a hearing request, all hearings conducted after September 11 were not conducted in accordance with the court's injunction. The Commissioner argues that, if such hearings had been conducted under the court's injunction and the households had received favorable decisions, the households would then have been entitled to retroactive benefits, that is benefits prior to September 11, a result which the Commissioner contends is prohibited by the eleventh amendment.

■ The Commissioner overlooks that also at issue in such hearings was whether the households were entitled to *future* benefits. By conducting such hearings on the bases of whether the primary wage earner had voluntarily quit a job without good cause, the Commissioner has illegally denied future benefits, in clear violation of the court's injunction.

Moreover, the Commissioner's contention that to conduct such hearings in accordance with the court's injunction would result in the award of retroactive benefits prohibited by the eleventh amendment is meritless. This court is only concerned with prospective application of the voluntary quit regulation. Whether households entitled to future benefits under this court's injunction are also entitled to retroactive benefits is an issue for the Commissioner, not this court. If the Commissioner decides to award retroactive benefits to such households, it is because his own rules and regulations require that he do so.

Accordingly, it is ORDERED that:

(1) That the plaintiffs' October 24, 1986, motion to require defendants to adhere to the court's declaration of relevant law, etc., is granted; and

(2) Defendant Commissioner of the Department of Pensions and Security is ENJOINED and RESTRAINED from failing to require that *all* "fair hearing decisions" issued on or after September 11, 1986, shall comply with the court's September 26, 1986, injunction.

It is further ORDERED that within seven days from the date of this order the Commissioner shall furnish counsel for plaintiffs a copy of each and every fair hearing decision or decision on rehearing issued on or after September 11, 1986, tying disqualification of a household to the conduct of the primary wage earner.

It is further ORDERED that the costs of these proceedings are taxed against the defendants, for which execution may issue.