James B. JACKSON, Plaintiff–Appellee,

v.

Harold STINCHCOMB, etc., et al.,
Defendants–Appellants.

No. 78–1702.

United States Court of Appeals,
Fifth Circuit.

Jan. 27, 1981.

MacFarlane, Ferguson, Allison & Kelly, Claude H. Tison, Jr., John R. Bush, Tampa, Fla., for defendants–appellants.

Dent & Pflugner, John C. Dent, Jr., Sarasota, Fla., for plaintiff–appellee.

Before MORGAN, ANDERSON and RANDALL, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

This is an appeal from the grant of a preliminary injunction ordering the appellant "to reinstate . . . [appellee] to the position with the City of Sarasota held on the date of his discharge with all rights and prerequisites relating thereto, and to grant the pay and allowances he otherwise would have received had he not been discharged." We have jurisdiction of the appeal pursuant to 28 U.S.C. § 1292(a) (1976) governing interlocutory appeals.

Appellants, various employees and officials of the City of Sarasota, Florida, are defendants in a civil action brought under 42 U.S.C. § 1983 (1976) by appellee James Jackson, a firefighter–E.M.T.–1 (emergency medical technician) in the City of Sarasota, Florida, Fire Department.[1] Jackson's com-

---

1. Appellee Jackson has moved to amend his complaint to include members of the Civil Service Board of the City of Sarasota as parties defendant and to add two counts relating to his post–termination hearing before the Civil Service Board for the City of Sarasota. Because these additional defendants and counts were not before the district court when it issued the preliminary injunction now under review, we do not concern ourselves with the Civil Service

plaint alleges three counts and seeks injunctive and declaratory relief as well as compensatory and punitive damages. This appeal is concerned only with the preliminary injunctive relief granted by the district court which reinstated appellee Jackson to his job as a firefighter.

## HISTORY OF PROCEEDINGS

This litigation began on October 27, 1977, when James Jackson filed a complaint in federal court pursuant to 42 U.S.C. § 1983 (1976) seeking expungement from his personnel file of a notice of reprimand and warning. The reprimand was made on September 13, 1977, after Jackson expressed his views during a radio interview concerning a proposed millage rate increase that would have affected the EMT services provided by the Sarasota Fire Department. In Count I of his complaint, Jackson sought a declaratory judgment that the defendants' conduct was in violation of the First and Fourteenth Amendments to the Constitution, and sought expungement of the reprimand from his records. He also asked the court to enjoin defendants from interfering with his rights of employment in any way. In Counts I and II, Jackson challenged the constitutionality of the personnel rules he was said to have violated.

Meanwhile, Jackson was in the process of seeking restoration of his civil rights which were lost when he was convicted in 1966 of attempted armed robbery in Louisiana. This conviction disqualified Jackson from serving as a union business agent under Florida law until his civil rights were restored. Fla.Stat. §§ 447.02, 447.04. Needing a letter of recommendation from his current employer as part of his application, Jackson approached his supervisor, Lt. Rhoades, informed him of the conviction and application for restoration of civil rights, and asked Rhoades to write an official letter of recommendation, but not to disclose the conviction to others in the fire department.

Chief Stinchcomb learned of the conviction in January, 1978. Chief Stinchcomb then consulted with the City Attorney, who advised him that under Florida law he was required to terminate Jackson's employment. The Sarasota Fire Department terminated Jackson's employment on February 4, 1978.[2] On February 9, 1978, Jackson

---

Board defendants or Counts IV and V in our review of the district court's injunction.

**2.** The termination letter sent to appellee Jackson reads as follows:

February 4, 1978
TO: James Butler Jackson
Firefighter First Class
Sarasota Fire Department
Sarasota, Florida

By and under the authority granted by Rule 7.13 of the Personnel Rules and Regulations for the Civil Service and General Personnel System, City of Sarasota, Florida, approved and adopted by the City Commission in pursuance of sub–section (c) of Section 3, Article V of the Charter of the City of Sarasota, Florida, adopted by the voters of the City of Sarasota at an election held September 4, 1973, in accordance with the Constitution and laws of the State of Florida, you are hereby notified that you are dismissed from employment as a Firefighter First Class of the Sarasota Fire Department, Sarasota, Florida, for cause and for the good of the service, for reasons that you are in violation of Section D of Rule 4.6 and Section N and Section P of Rule 7.13 of the Personnel Rules and Regulations of the Civil Service and General Personnel System, City of Sarasota, Florida,

and in violation of Section 112.011 and Section 633.34(3) of Florida Statutes, all of which tends to reflect discredit upon the City of Sarasota and diminishes the public safety effectiveness of the City of Sarasota Fire Department.

As provided in Rule 14.7 of the Personnel Rules and Regulations for Civil Service and General Personnel System, City of Sarasota, Florida, you are further notified that you may, within seven (7) working days, appeal the decision terminating your employment to the Civil Service Board. The Personnel Director will arrange to place this matter on the Board's agenda for its next regular meeting, and will notify you of the time and place for the appeal hearing.

The above reasons or grounds for your dismissal are based on the following facts individually and collectively:

I. *Personnel Rules and Regulations of the Civil Service and General Personnel System, City of Sarasota, Florida.*
  A. Section D, Rule 4.6. In violation of Section D of Rule 4.6, you were not eligible for employment as a professional Firefighter at the time you were hired.
  B. Section N, Rule 7.13. You exhibited conduct unbecoming an employee of the City of Sarasota by trying to induce a

filed an amended complaint adding an additional count (Count III) in which he asked the court to enjoin defendants from dismissing him from his employment and otherwise interfering with his rights and to issue a declaratory judgment declaring that Fla.Stat. §§ 112.011(2)(b) and 633.34 as applied are unconstitutional. Jackson also sought actual, compensatory and punitive damages. Jackson, by letter from his attorney dated February 10, 1978, appealed to the City of Sarasota its decision to fire him.

Jackson's February 9, 1978, motion for injunctive relief was heard February 16, 1978. On February 21, 1978, the district court entered a preliminary injunction requiring that Jackson be reinstated to his job. Defendants filed a motion for reconsideration on February 21, 1978. A hearing was held on this motion on March 17, 1978. At this hearing, the court indicated that a supplemental hearing would be scheduled and appellants' appeal rights would be protected. That hearing was held on May 26, 1978. At the end of the May 26 hearing, the district court judge concluded that Jackson had not intentionally misrepresented that he was not a convicted felon in his application for employment as a firefighter. Supp. Record, vol. 2 at 127.

On March 20, 1978, appellants filed a notice of appeal from the district court's February 21, 1978, order granting Jackson a temporary restraining order and preliminary injunction. Meanwhile, on March 8, 1978, a civil service hearing to consider Jackson's termination was held. A continuation of the hearing of the Civil Service Board was held on March 15, 1978.

On April 14, 1978, Jackson moved to amend his complaint to add supplemental parties and pleadings. In Counts IV and V, Jackson alleged that the post–termination procedures followed by the Civil Service Board were violative of due process and that Civil Service Rule 14, Employee Review Requests, and Section 14.7, Procedure for Appeal of Demotion, Suspension or Dismissal, are facially unconstitutional and unconstitutional as applied by defendants–Civil Service Board members.

It will be helpful to isolate which issues are before us on this appeal and which are not. Counts I and II of the complaint, relating to the radio interview, are not before us. Counts IV and V, relating to the adequacy of the post–termination hearing which occurred after the preliminary injunction, are not before us. We consider on this appeal only the propriety of the preliminary injunction reinstating Jackson pursuant to Count III of his complaint.

## SCOPE OF REVIEW

█ Normally, the standard governing appellate review of the grant of a preliminary injunction is whether the district court abused its discretion. *Morgan v. Fletcher,*

---

fellow employee to commit an unauthorized act by asking Fire Lieutenant Thomas T. Rhoades, Jr., Sarasota Fire Department, to use Sarasota Fire Department letterhead stationery to write to the Bureau of Pardons, State of Louisiana, in your behalf.

C.  Section P, Rule 7.13. You were convicted of a criminal act, as stated in your sworn statement (which is dated December 29, 1977, in your Petition for Restoration of Civil Rights to the Louisiana Board of Pardons) and as verified through investigation by the Sarasota Police Department.

II.  *Florida Statutes.*

A.  Section 112.011. You were initially employed under false pretenses and in violation of Section 112.011.

B.  Section 633.34(3). You had been convicted of a felony which in itself disqualifies you from employment as a professional Firefighter within the State of Florida.

Dated this 4th day of February, 1978.

/s/ H. R. Stinchcomb
Harold R. Stinchcomb
Fire Chief

After due consideration and review of the facts, I hereby consent to and approve this dismissal of Firefighter First Class James Butler Jackson.

/s/ Kenneth Thompson
Kenneth Thompson
City Manager

Notice was served to James Butler Jackson this 4th day of February, 1978

/s/ Lewis Morgan Battalion Captain
Signature of Officer Serving Notice
/s/ Thomas Fields, Capt. 1 STA

518 F.2d 236 (5th Cir. 1975); *Di Giorgio v. Causey*, 488 F.2d 527 (5th Cir. 1973). An appellate court does not consider the merits of the controversy except as is necessary to determine whether there has been an abuse of discretion. 518 F.2d at 238. "The discretion of the District Court, however, is not completely unrestrained; it must be exercised with regard to what this Court has labeled 'the four prerequisites for the extraordinary relief of preliminary injunction' [citations omitted]. The four prerequisites are: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest [citations omitted]." 518 F.2d at 239. As we indicated in *Buchanan v. United States Postal Service*, 508 F.2d 259, 267 n. 24 (5th Cir. 1975):

> [t]he four factors considered prior to the award of preliminary injunctive relief are mixed questions of fact and law. On review the district court's findings of fact are to be upheld unless 'clearly erroneous.' F.R.Civ.P. 52(a). The district court's conclusions of law are subject to broad review and will be reversed if incorrect.

Of the four prerequisites for preliminary injunction, appellants dispute only the substantial likelihood of success on the merits. Specifically, then, we review this conclusion

of the district court to determine whether it was based on a clearly erroneous factual determination or an incorrect determination of law.

### THE DISTRICT COURT'S OPINION

In its February 21, 1978, order, the court found first that the provisions of Fla.Stat. § 112.011(2)(b)[3] modify the provisions of Fla.Stat. § 633.34(2)[4]. The court then held that "[i]n view of the defendants' disregard for the modifying effect which Fla.Stat. § 112.011(2)(b) has on Fla.Stat. § 633.34(2), the Court is of the opinion the defendants' action in terminating the plaintiff was arbitrary and unreasonable and amounts to a denial of due process. *Thompson v. Gallagher*, 489 F.2d 443 (5th Cir. 1973)." *Jackson v. Stinchcomb*, 451 F.Supp. 494, 496 (M.D.Fla.1978). The court observed next that Jackson was discharged "without the prophylactic pretermination procedures as set forth in *Thurston v. Dekle*, 531 F.2d 1264 (5th Cir. 1976) [*vacated on other grounds*, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978)]."[5] 451 F.Supp. at 496.

The district court then, "having considered ... the prerequisites for granting injunctive relief as set forth in *Morgan v. Fletcher*, 518 F.2d 236 (5th Cir. 1975) ...." (451 F.Supp. at 496), held that injunctive relief should be granted. Implicit in the court's order is the conclusion that Jackson was likely to succeed on the merits of one or more of the theories referred to by the court, the substantive due process theory, the procedural due process theory, or a the-

---

3. Fla.Stat. § 112.011(2)(b) reads as follows:

(b) This section shall not be applicable to the employment practices of any fire department relating to the hiring of firemen. An applicant for employment with any fire department with a prior felony conviction shall be excluded from employment for a period of four years after expiration of sentence or final release by the parole and probation commission unless the applicant, prior to the expiration of the four-year period, has received a full pardon or has had his civil rights restored.

4. The district court's opinion construes the provisions of the Florida statute which reads "[a]ny person initially employed as a firefighter must ... not have been convicted of a felony

....." The opinion indicates in some places that this provision is found at § 633.34(3). Elsewhere, it indicates that it is found at § 633.34(2). We note that the provision is found at Fla.Stat. § 633.34(2). We will refer to the provision as 633.34(2).

5. The Supreme Court vacated and remanded *Thurston v. Dekle* for reconsideration in light of *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). On remand, this court revised its opinion only with respect to its subject matter jurisdiction and standing sections. It left intact its pretermination proceedings analysis. *Thurston v. Dekle*, 578 F.2d 1167 (5th Cir. 1978).

ory that his discharge occurred in violation of state law.

## ANALYSIS

Appellants' argument, briefly stated, is that Jackson cannot succeed in federal court on the merits of his claim for reinstatement because those claims over which the district court had subject matter jurisdiction will not support reinstatement, and the district court did not have subject matter jurisdiction over the state law claim which might have supported reinstatement. Accordingly, appellants argue, Jackson failed to satisfy the requirements for a preliminary injunction and the district court should not have granted it. In our analysis, we will review each claim considered by the district court to determine whether it can serve to support the court's conclusion, in ruling on the motion for preliminary injunction, that plaintiff has a substantial likelihood of prevailing on the merits.

1.  *The Thompson v. Gallagher substantive due process issue.*

The district court cited *Thompson v. Gallagher*, 489 F.2d 443 (5th Cir. 1973), as the authority for its conclusion that "[i]n view of the defendants' disregard for the modifying effect which Fla.Stat. § 112.011(2)(b) has on Fla.Stat. § 633.34(2) . . . the defendants' action in terminating the plaintiff was arbitrary and unreasonable and amounts to a denial of due process." 451 F.Supp. at 496. We do not read *Thompson v. Gallagher* as authority for this determination.

In *Thompson v. Gallagher*, Thompson sued the Mayor of the City of Plaquemine, Louisiana, under 42 U.S.C. § 1983 (1976) after Thompson was dismissed by the city because his employment violated a city ordinance.[6] Thompson had received an undesirable discharge from the Army under other than honorable conditions prior to his em-

ployment with the city. Thompson attacked the ordinance on due process and equal protection grounds. This court noted that of the interests advanced by the defendant as justifications for the ordinance, the only one that could be considered for purposes of the Fourteenth Amendment analysis was that the ordinance was intended to help the city in maintaining the quality of its workforce and assuring that its employees perform their tasks as well as possible. The court held, however, that the ordinance's bar of "persons with other than honorable discharges" from municipal employment was irrational because the considerations which lead to other than honorable discharges include many factors which have no relationship to one's ability to work, as Thompson did, in a power plant. These factors include security considerations, sodomy, homosexuality, financial irresponsibility and bedwetting. Such a "general category of 'persons with other than honorable discharges' is too broad to be called 'reasonable' when it leads to automatic dismissal from any form of municipal employment," the court said. 489 F.2d at 449. Moreover, the court noted, the ordinance in question subjects veterans to standards to which nonveterans are not subjected. Accordingly, the court found, the ordinance did not bear a rational relationship to the fulfillment of a valid governmental interest.

In *Thompson*, the plaintiff was discharged from his job by the defendant who acted in conformity with a municipal ordinance. That ordinance itself was found to be unconstitutional and hence an impermissible basis for dismissal. In the instant case, Jackson was dismissed under the alleged authority of Florida law and Civil Service Board regulations. The statutes are not challenged as creating an unconstitutional classification. On the contrary, Jackson argues[7] that the statutes support

---

6. The ordinance, passed five weeks after Thompson was hired by the city, reads as follows:

> Resolved, that any person employed by the City of Plaquemine or by the Emergency Employment Act, if said person is a veteran, must have an Honorable Discharge and must be a man of good character.

7. In his original complaint, Jackson asserted that Fla.Stat. §§ 112.011(2)(b) and 633.34 are unconstitutional. In his brief on appeal, however, Jackson has withdrawn this assertion and urges, instead, that these statutes support his position.

his position and that defendants have misinterpreted § 112.011 and the modifying effect it was allegedly intended to have on § 633.34(2)[8]. He claims further that the regulations used to justify his discharge contravene state policy and accordingly create a discriminatory classification in violation of the United States Constitution. The discrimination practiced against Jackson by the operation of these regulations is two-fold, he argues: (1) The City of Sarasota's regulations operate to prevent his employment in Sarasota because he is a convicted felon while convicted felons elsewhere in the state are not barred from employment as firefighters; (2) The regulations operate to prevent his employment as a firefighter anywhere else in the state as well because the state will rescind his certificate[9] as a result of his discharge for violation of city regulations.

None of Jackson's arguments supports a viable substantive due process claim. The distillation of Jackson's argument is that the city, in discharging him because he is a convicted felon, violated state law. But termination of Jackson's employment in violation of state law does not by itself rise to the level of deprivation of constitutional rights. In *McDowell v. State of Texas*, 465 F.2d 1342 (5th Cir. 1971), *cert. denied* 410 U.S. 943, 93 S.Ct. 1371, 35 L.Ed.2d 610 (1973), we rejected a § 1983 plaintiff's claim that his substantive due process rights were violated when he was terminated from state employment in violation of state statutes and local policy. There we said

> The right to employment by a State, in itself, is not a right secured by the Constitution or by the Laws of the United States; thus, even an invalid or an improper discharge from such an office, unaccompanied by some more precise claim of *federal right* than a general claim of

lack of due process, is not the sort of deprivation of a right, privilege or immunity which is secured by the Constitution of the United States or an Act of Congress providing for equal rights of citizens within the meaning of 28 U.S.C.A. § 1343(3) .... Cases of this genre constitute uniquely State causes of action. As such, they are peculiarly within the realm of State courts.

465 F.2d at 1345 -6 (footnote omitted). We conclude, therefore, that Jackson's substantive due process claim pursuant to *Thompson v. Gallagher* cannot succeed on the merits and accordingly cannot support preliminary injunctive relief.

2. *Thurston v. Dekle procedural due process claim.*

■ We turn next to the district court's reference to *Thurston v. Dekle*, 531 F.2d 1264 (5th Cir. 1976), *vacated on other grounds*, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978). Specifically, our inquiry is whether the principles of *Thurston v. Dekle* are legally sufficient to support the district court's grant of preliminary relief here. We find the order of reinstatement may not stand on the basis that the requirements of *Thurston v. Dekle* were not met.

We find that as a matter of law, Jackson's *Thurston v. Dekle* claim will not support the grant of a preliminary injunction beyond the time of the post–termination hearing. In *Thurston v. Dekle* a discharged city employee brought a § 1983 class action challenging the suspension and dismissal rules of the municipality and seeking a declaratory judgment, injunctive relief, and an award of back pay. The issue before the court was whether the suspension and dismissal rules of the municipality provided constitutionally adequate pretermination

---

**8.** *See* n.4, *supra.*

**9.** In his affidavit filed in support of his motion for a temporary restraining order and preliminary injunction, Jackson stated that he was informed by the Bureau Chief of the Bureau of Fire Standards and Training of the Division of State Fire Marshal of the Department of Insurance Commissioner of the State of Florida that as a result of his dismissal by the City of Sarasota he would not be approved for employment as a firefighter with any other agency in the State of Florida.

procedures to nonprobationary city employees. Pursuant to these rules, plaintiff Thurston was suspended without pay and his termination was subsequently upheld on appeal by the Civil Service Board. Thurston did not attack his final termination. He challenged only "the initial suspension without pay absent constitutional pretermination protection." 531 F.2d at 1269. This court observed that "[t]he only remedy he [Thurston] could invoke was back pay for the period of time between his initial suspension without pay and the date he was entitled to post–termination procedures." 531 F.2d at 1269.

In *Glenn v. Newman*, 614 F.2d 467 (5th Cir. 1980), we held that when there is a constitutionally adequate post–termination hearing, such a subsequent hearing cures a due process deficiency in the pretermination proceedings and the plaintiff has no standing to seek declaratory or injunctive relief, but plaintiff is entitled to back pay between the time of his discharge and the post–termination hearing. 614 F.2d at 473 n.6. Thus the remedy for a pretermination due process violation is to order reinstatement pending a hearing, or, where there is a post–termination hearing, to award back pay for the period between the dismissal and the conclusion of the post–termination hearing. A claim of pretermination procedural due process violations will not support a preliminary injunction requiring reinstatement beyond the date of an adequate post–termination hearing.

As indicated in the discussion above, *Thurston v. Dekle* could support limited reinstatement for the period of time between Jackson's termination on February 4, 1978, and the conclusion of his post–termination hearing on March 15, 1978.[10] However, we note that in its injunction ordering reinstatement, there were no findings of fact with respect to a *Thurston v. Dekle* claim as required by Fed.R.Civ.P. 52(a).[11] Because we dispose of this case on another ground, we need not address the adequacy of the district court's findings or consider whether remand would be desirable. We hold that a *Thurston v. Dekle* claim of deprivation of procedural due process, even if supported by findings of fact, and even if likely to succeed on the merits, is not a claim which warrants the injunction ordering Jackson's reinstatement beyond the March 15, 1978, post–termination hearing.[12]

### 3. *The state law claim.*

We have determined that Jackson's substantive due process claim could not succeed on the merits and that his procedural due process claim, even if successful on the merits, would entitle him to relief only until the time of an adequate post–termination hearing and accordingly would not support injunctive relief in the form of an order of

---

**10.** Jackson's post–termination hearing before the Civil Service Board began on March 8, 1978, and was continued until March 15, 1978, when it was concluded. We consider that the date of the conclusion of the post–termination hearing marks the end of any period of time for which Jackson might be entitled to injunctive relief based on a theory of deprivation of procedural due process because it is only at the conclusion of a post–termination hearing that a deprivation of procedural due process by failure to afford *Thurston v. Dekle* post–termination procedures may have been cured.

**11.** We note that the district court judge stated during the preliminary injunction hearing of February 16, 1978, "I would suggest that there is a strong likelihood that determination [sic] procedures followed did not follow the requirements of law . . . ." He also said "But I think that there is a strong likelihood that the risk requirement as set out in *Thurston versus De-*

*kle* was not reduced as required by that Statute." Record, vol. 2 at 61. However, nowhere in the transcript of the hearing or in his order of February 21, 1978, following the hearing did he make definite findings of fact.

**12.** In Counts IV and V of Jackson's proposed amended complaint, Jackson challenges the adequacy of the Civil Service Board post–termination proceedings. We do not consider whether inadequate post–termination proceedings coupled with nonexistent or inadequate pretermination proceedings would suffice to support a preliminary injunction of reinstatement beyond the date of the post–termination proceedings on a theory of deprivation of due process. The question of the adequacy of the Civil Service Board proceedings was not before the district court judge when he issued the preliminary injunction and therefore is not before us now.

reinstatement beyond the conclusion of such a hearing. We next consider whether the district court's injunction is supportable on the basis of a state law claim, the only other theory of relief suggested by the district court. Before we can decide whether the district court judge abused his discretion in granting the injunction on the basis of a state law claim, we must identify the state law claim, determine whether the district court had subject matter jurisdiction over the claim, and consider whether Jackson showed there was a substantial likelihood of success on the merits of that claim.

The termination letter [13] indicates that Jackson could be dismissed from his employment with the City of Sarasota only for cause.[14] The letter recites not one but several violations of state law and civil service regulations which provide grounds for Jackson's discharge. These reduce to three different reasons: (1) that Jackson's status as a convicted felon rendered him ineligible for employment as a fireman with the City of Sarasota; (2) that Jackson failed to divulge that he had been convicted of a crime at the time of his employment application and that this constituted a misrepresentation by Jackson in obtaining his employment, i. e., obtaining employment under false pretenses;[15] and (3) that Jackson vio-

lated the regulation (Rule 7.13 N) prohibiting conduct unbecoming an employee of the City of Sarasota when he asked his superior, Lt. Rhoades, to write a letter on Sarasota Fire Department stationery to the Louisiana Bureau of Pardons in Jackson's behalf. In order to succeed on the merits of his claim that he was discharged in violation of state law, Jackson would have to show that none of those reasons was sufficient cause for his dismissal.

Having identified the state law claim, we next address the question whether the district court had subject matter jurisdiction over that claim. Jackson's complaint invoked the jurisdiction of the federal court "under 28 U.S.C. § 1343(3) and (4) through pendent jurisdiction and statutory law."[16]

■ In order for the district court to exercise pendent jurisdiction over a state law claim not otherwise cognizable in federal court, the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a "common nucleus of operative fact." *United ed Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Silva v. Vowell*, 621 F.2d 640 (5th Cir. 1980). Even when these two criteria are satisfied, thus establishing the power to exercise pendent

**13.** See n. 2, *supra.*

**14.** Rule 7.13 of the Personnel Rules and Regulations of the Civil Service and General Personnel System, City of Sarasota, Florida, provides for discharge of a permanent employee only for cause. Appellants do not dispute that the City must show cause for Jackson's dismissal.

**15.** The appellants apparently concede that there is no specific question on the employment application form asking whether the applicant has ever been convicted of a felony. The record bears this out. Appellants argue, however, that the provision on the employment application by which an applicant consents to take a polygraph examination and to have the results of that examination considered in connection with his application, coupled with the release statement on the application by which an applicant agrees that any misstatement made by him in the application will be cause for discharge, enables the city to use misstatements made during the polygraph examination as a basis for discharge. The city asserts further that the polygraph examination administered to

its applicants includes the question whether the appellant has ever been arrested or involved in criminal activity and that Jackson untruthfully answered "no" to those questions.

**16.** Paragraph 2 of Jackson's complaint.

28 U.S.C. § 1343 reads:
CIVIL RIGHTS AND ELECTIVE
FRANCHISE
The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

. . . . .

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

jurisdiction, the decision whether to exercise pendent jurisdiction is within the discretion of the trial judge. *United Mine Workers v. Gibbs, supra; Silva v. Vowell, supra.*

First we inquire into the power of the district court to exercise pendent jurisdiction over the state law claim. Ordinarily, the question of the power of a federal court to hear a pendent claim is decided on the pleadings. *United Mine Workers v. Gibbs,* 383 U.S. 715, 727–28, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218 (1966). We must determine whether Jackson's complaint alleges a substantial federal claim to which his state claim could be appended. The question for jurisdictional purposes is "not whether the claims are without merit but whether 'prior decisions inescapably render the claims frivolous.'" *Curtis v. Taylor,* 625 F.2d 645, 649–50 (5th Cir. 1980), *quoting Hagans v. Lavine,* 415 U.S. 528, 538, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974), *quoting Goosby v. Osser,* 409 U.S. 512, 518, 93 S.Ct. 854, 858, 35 L.Ed.2d 36 (1973). Accordingly, we turn to the complaint as it appeared to the district court judge at the time of his ruling on the motion for preliminary injunction. Count III of Jackson's complaint contains a mixture of allegations all relating to Jackson's discharge.[17] Jackson presents two claims arguably based on federal law in Count III. He asserts first that he was arbitrarily and unreasonably discharged from his employment in violation of his First and Fourteenth Amendment rights.[18] He alleges, secondly, that his discharge was motivated by the intent to discourage union membership.[19]

Jackson's claim, asserted in paragraph 27 of his complaint, that his First and Fourteenth Amendment rights were violated by his discharge, does not raise a substantial claim of deprivation of substantive due process, based on *Thompson v. Gallagher, supra.* As we concluded above, Jackson's substantive due process claim of wrongful discharge is without merit. We conclude now that the claim is not a substantial one and accordingly cannot support a pendent state claim. *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Curtis v. Taylor,* 625 F.2d 645 (5th Cir. 1980); *Silva v. Vowell,* 621 F.2d 640 (5th Cir. 1980).

We decline to decide whether the procedural due process claim, based on *Thurston v. Dekle, supra,* is the kind of substantial federal claim which will support a pendent state claim. We observe that Jackson did not raise a clearly identifiable procedural due process claim in his complaint although that issue was later made explicit in the hearing on the motion for preliminary injunction and in the district court judge's order. Because of our holding with respect to Jackson's First Amendment claim relating to his union activities, we need not and do not address the question whether the procedural due process claim alone would support a pendent claim.

---

**17.** The allegations of Counts I and II relate to the reprimand and warning of Jackson and not to his discharge. Accordingly, we do not consider them. Nor do we consider the allegations of Counts IV and V because they were not before the district judge at the time of his injunction.

**18.** Paragraph 27 of Jackson's amended complaint reads as follows:

The acts committed by defendants, as specified above, were arbitrary and unreasonable, were for private objects wholly apart from their official duties, powers and obligations and were committed willfully, wantonly, maliciously and with the specific intent to injure the plaintiff by depriving the plaintiff of the opportunity to work in public service which is secured by the First Amendment against abridgement by the United States and is among the fundamental personal rights, liberties and privileges which are secured to all persons by the Fourteenth Amendment against abridgement by the States.

**19.** Paragraph 28 of Jackson's amended complaint reads as follows:

Plaintiff would further show this Court that the Defendants ... acted willfully, maliciously and with the specific intent in concert, and at the actual or constructive direction of the Defendants ... under color of state law, to unlawfully discourage membership in Local Union 2546, IAFF, by dismissing its President, the plaintiff herein, in violation of Title 42, U.S.C. § 1983.

As we have indicated, Jackson alleges in paragraph 28 of his complaint that defendants attempted to discourage union membership by dismissing Jackson, the union president, from his employment. Jackson's right to membership in the union is clearly protected by the First Amendment, as appellants concede. *See Lontine v. VanCleave*, 483 F.2d 966 (5th Cir. 1973). Appellants argue, however, that no issue of speech or free association is presented in this case and that no basis exists in the record on which such a claim could be made. But for purposes of the issue at hand, *i. e.*, whether Jackson alleged a substantial federal constitutional claim upon which to append his state law claim, the contents of the record and even the proof offered at the preliminary hearing do not control. As discussed earlier, it is clear that the question of the power of the district court to hear pendent state claims is clearly answerable by reference to the pleadings alone.[20] *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *see, e. g., Silva v. Vowell*, 621 F.2d 640 (5th Cir. 1980). The two claims—the federal claim that Jackson was discharged to discourage union membership and that the reasons based on state law which were given for his discharge were pretextual, and the state claim that he was discharged in violation of state law—are both grounded upon Jackson's discharge and the reasons therefor and consequently arise out of a common nucleus of operative fact. *See e. g., Hamilton v. Chaf-*

*fin*, 506 F.2d 904 (5th Cir. 1975); *Burton v. Waller*, 502 F.2d 1261 (5th Cir. 1974), *cert. denied* 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975); *Anderson v. Nosser*, 438 F.2d 183 (5th Cir. 1971), *modified on rehearing on other grounds*, 456 F.2d 835 (5th Cir.) (en banc), *cert. denied* 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89 (1972).

We conclude that the complaint does allege a substantial federal claim which arises out of the same common nucleus of operative facts as the state claim. Therefore, we conclude that the district court had the power to exercise pendent jurisdiction over the state law claim at the preliminary injunction stage of the litigation.

Having concluded that the district court did have the power to exercise pendent jurisdiction, we inquire next whether the exercise of pendent jurisdiction is an abuse of discretion. We note that it is unusual for a court to decline to exercise that power where it exists. According to Professors Wright, Miller and Cooper, "[a]lthough there are cases in which courts have used their discretion to refuse to hear a pendent claim, these are exceptional and ordinarily the power is exercised if it is found to exist." Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3567, pp. 455–56 (1975). *See also Brunswick v. Regent*, 463 F.2d 1205 (5th Cir. 1972), and *Brown v. Knox*, 547 F.2d 900 (5th Cir. 1977).[21] We note also that the district

**20.** It is not impossible that as the proof is developed during the later stages of this litigation, the district court will decide, in the exercise of its discretion, that the state law claim should be dismissed because the "state claim constitutes the real body of . . . [the] case, to which the federal claim is only an appendage." *United Mine Workers v. Gibbs*, 383 U.S. 715, 727, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Although the discretionary exercise of pendent jurisdiction remains open throughout the litigation, our discussion of the discretionary factors later in the text of this opinion makes it clear that it is not now foreseeable that the state claims will predominate. Moreover, we must point out that the interests of judicial economy, one of the discretionary factors, would clearly militate against dismissal of the state law claim in this case where the district court judge has already devoted a great amount of time and

resources to consideration of that issue at not just one but at three hearings. We note that the district judge, if faced with a challenge to pendent jurisdiction at a later stage of the litigation, might also consider the federal question claims alleged in Counts IV and V as a basis for pendent jurisdiction.

**21.** In *Brown v. Knox, supra*, a black female plaintiff brought a suit alleging harassment by police officers, culminating in an unconstitutional arrest and prosecution, to discourage her from bringing brutality charges and to punish her because of her race, which allegations supported both a § 1983 claim and pendent state claims for false imprisonment, intentional infliction of emotional distress, etc. This court held that the district court had power to exercise pendent jurisdiction and abused its discretion in refusing to do so.

judge here did in fact address and resolve the state law issues: for example, he held that the later Florida statute modified the earlier one. Moreover, a careful review of the transcript convinces us that the district judge did intend to exercise pendent jurisdiction. Accordingly, although the district judge did not make express findings exercising pendent jurisdiction, we conclude, consistent with our approach in *Martin v. Louisiana and Arkansas Railway Co.*, 535 F.2d 892 (5th Cir. 1976), *cert. denied* 429 U.S. 1043, 97 S.Ct. 745, 50 L.Ed.2d 755 (1977), that the district court's disposition of the case was equivalent to an exercise of pendent jurisdiction over the state claims. We conclude further that the exercise of pendent jurisdiction is well within the appropriate discretion of the district court.

■ There are several discretionary factors to be considered by a district court in deciding whether to exercise its pendent jurisdiction power. Those factors pertinent to this case include consideration of whether "state issues substantially predominate . . . in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought;" a policy in favor of avoiding needless decisions of state law "both as a matter of comity and to promote justice between the parties by providing for them a surer-footed reading of applicable law;" "considerations of judicial economy, convenience and fairness to litigants;" consideration of whether "the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong." *United Mine Workers v. Gibbs*, 383 U.S. at 726–27, 86 S.Ct. at 1139–40.

At this early stage of the litigation, there is no indication that the evidence would be substantially devoted to the unique elements of the state claims, or that the state issues and remedies sought will "substantially predominate." To the contrary, the state issues would simply be subsidiary issues in the federal claim. For example, the federal claim would be that Jackson was discharged because of his union membership; the state would then raise the state issues by attempting to show that Jackson was discharged because of the Florida statute rendering convicted felons ineligible, the alleged misrepresentation, and the letter request. Jackson would then attempt to show that these state law grounds were without merit and pretextual. *See Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Stapp v. Avoyelles Parish School Board*, 545 F.2d 527 (5th Cir. 1977); *Robison v. Witchita Falls and North Texas Community Action Corp.*, 507 F.2d 245 (5th Cir. 1975). Because the state law issues are also subsidiary issues in the federal question claim, we conclude that the state issues are not substantially predominant. *Accord Brown v. Knox, supra.*

Nor do we find the state law issues particularly complex so as to create a concern for "procuring . . . a surer-footed reading of the applicable law" *Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. at 1139. We do not find the construction of the state statutes to be complex; on the other hand we find the construction rather obvious.

Moreover, considerations of judicial economy, convenience and fairness to the litigants weigh in favor of the exercise of pendent jurisdiction. *See note 20, supra.*

Finally, the fourth discretionary factor— whether the state claim is closely tied to questions of federal policy–points strongly in this case to the exercise of pendent jurisdiction. In § 1983 suits to remedy constitutional violations, such as the instant suit, there is a strong federal policy in favor of insuring access to the federal forum. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled in part, Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

In short, our review of the *Gibbs* discretionary factors in the context of this case persuades us that the exercise of pendent jurisdiction is appropriate at this stage of the litigation.

Having determined that the district court had pendent jurisdiction of the state law claims, we next consider whether there is a

substantial likelihood of Jackson's success thereon. Earlier in this opinion we listed the reasons given for Jackson's discharge. Briefly summarized, these are (1) his status as a convicted felon; (2) his alleged misrepresentation, *i. e.,* that he was not a convicted felon, on his employment application; and (3) his request to Lt. Rhoades for a letter in support of his petition for restoration of his civil rights. The record shows that the district court considered all of these justifications offered by the city for its dismissal of Jackson. In granting the injunction, the district court concluded that there was a substantial likelihood that Jackson would be able to show that none of these reasons constituted sufficient cause to justify his discharge. We must determine whether the district court erred in this conclusion.

▮▮▮ With respect to the first reason for the dismissal, Jackson's status as a felon, the district judge concluded in his February 21, 1978, order that the provisions of Fla.Stat. § 112.011(2)(b) [22] modify Fla.Stat. § 633.34(2). [23] The court found as a fact that Jackson applied for his job more than four years after the termination of his probation. The necessary inference to be drawn is that Jackson's status as a convicted felon did not constitute cause under Florida law for his discharge. We agree with the district judge that Fla.Stat. § 633.-34(2) must be read in conjunction with Fla.Stat. § 112.011, and that the provisions of Fla.Stat. § 112.011(2)(b) modify § 633.34(2). Florida Attorney General Op. No. 72-108 (March 27, 1972) states that Fla.Stat. § 112.011, concerning removal of disqualification for employment of felons, modifies the provisions of Fla.Stat. § 163.490(3) (now Fla.Stat. § 633.34(2)), concerning minimum qualifications for employment as a firefighter. We note that this Attorney General opinion appeared before the enactment of Fla.Stat. § 112.011(2)(b) in 1973. It thus does not directly reach the question of the effect of Fla.Stat. § 112.011(2)(b) on Fla.Stat. § 633.34(2), except in its conclusion

that the later statute was intended to modify the earlier one.

Attorney General Op. No. 073-355 (September 20, 1973) appeared after Fla.Stat. § 112.011 was amended to include § 2(b). The opinion, in pertinent part, addresses the question: "may licensing authorities under § 163.490(3) [now § 633.34(2)] . . . now deny licenses, permits or certificates to former offenders whose civil rights have been restored solely on the basis that they are former offenders?" The opinion responds:

> It, therefore, is clear that a licensing authority may not deny licenses, permits, certificates, etc. to former offenders whose civil rights have been restored, solely on the basis that they are former offenders unless the offense was a felony or first degree misdemeanor and directly relates to the license sought. This applies to all of the occupations referred to in your question . . . with the exception of firefighters . . . and attorneys . . . . Firefighters are qualifiedly exempt under § 2(b), Ch. 73–109, supra [§ 112.011(2)(b), F.5] as follows:
>
>> This section shall not be applicable to the employment practices of any fire department relating to the hiring of firemen. An applicant for employment with any fire department with a prior felony conviction shall be excluded from employment for a period of *four years after expiration* of sentence or final release by the probation and parole commission, unless the applicant prior to the expiration of the four year period, has received a full pardon or has had his civil rights restored. (Emphasis supplied in Attorney General opinion).

Attorney General Op. No. 73-355 thus indicates that the impact of a prior felony conviction on applicants for firefighting positions is to be governed by the terms of Fla.Stat. § 112.011(2)(b). It also indicates that firefighters are "qualifiedly exempt,"

---

**22.** *See* footnote 3, *supra.*

**23.** *See* footnote 4, *supra.*

quoting § 2(b) of the statute itself which makes it clear that firemen are exempt from disqualification after the four–year period.

We agree with the district court that the terms of § 112.011(2)(b) clearly indicate that at the end of a four–year period after expiration of his sentence or final release by the Probation and Parole Commission, an applicant for employment as a firefighter shall no longer be excluded from such employment because of a prior felony conviction. We note that the legislative purpose of § 112.011(2)(b) is to encourage the rehabilitation of felons by removing one's status as a felon as a disqualification for public employment. S.B. 71–115 Fla. Legislature (1971). We are also in agreement with the district court's view that general principles of statutory construction lead to the conclusion that the exception provided with respect to firemen in Fla.Stat. § 112.011(2)(b) modifies the provisions of the earlier enacted statute, Fla.Stat. § 633.34(2). "(T)he last expression of the legislative will is the law, and ... therefore, the last in point of time or order of arrangement prevails. This rule is applicable where the irreconcilable provisions appear in different statutes, or in the different provisions of the same statute." 30 Fla.Jur. *Statutes* § 120 (1974).

The district court found unequivocally that more than four years had passed between the time when Jackson's probation was terminated and the time he applied for his job with the City of Sarasota. We do not disturb this finding. Accordingly, we conclude that Jackson is likely to succeed in his contention that his status as a convicted felon does not constitute cause for his discharge.

The district judge considered the misrepresentation issue at the February 16, 1978, hearing and, after appellants' motion for reconsideration, conducted an evidentiary hearing on May 26, 1978, in which the issue was again addressed. At the conclusion of the May 26 hearing, the district judge, having determined that Jackson did not intentionally misrepresent his status, reaffirmed the injunction. We see no reason to disturb the district court's finding that Jackson did not intentionally misstate that he had not been involved in criminal activity. Nor will we disturb the district court's implicit conclusion that Jackson is likely to prevail with respect to the city's intentional misrepresentation defense.[24]

Finally, the district court considered the third reason given for Jackson's dismissal, his request for a letter in his behalf from Lt. Rhoades, at both the February 16, 1978, preliminary injunction hearing and at the May 26, 1978, evidentiary hearing. The judge did not explicitly rule that this reason did not amount to "cause" under Florida law. However, it is clear from the manner in which the judge handled this issue that he was convinced that it was devoid of merit. (Record, vol. 2 at 70–72; Supp. Record on Appeal, vol. 2, at 46–51). The judge considered and rejected the defense that Jackson's request amounted to cause for his dismissal. We have reviewed this conclusion and the grounds for it in the record and we do not disturb the district court's determination that Jackson is likely to prevail on the merits of this issue.

Summarizing our decision, we hold that the district court's preliminary injunction is not supportable on the basis that Jackson is likely to prevail on the merits of his sub-

---

24. Appellants question the propriety of the district court's undertaking to make factual determinations regarding Jackson's subjective intent. "The District Court," appellants assert, "here has ... invaded the province of the Civil Service Board by making a *de novo* fact determination, after the Civil Service Board had conducted its hearing, that Jackson had no subjective intent to mislead SFD." (Brief of appellants at 37). However, appellants do not indicate how reliance on the Civil Service Board proceeding record rather than conducting his own hearing would alter the district judge's

conclusion that there is a substantial likelihood that Jackson will prevail on the misrepresentation issue. Appellants point to no conflict in fact findings between the two hearings. Our review of the transcript of the Civil Service Board hearing reveals that the Board made no fact findings and that it was not even certain about the meaning of its vote, i. e., two members voting in favor of and 2 members voting against reinstatement. We agree with the district court that there is a substantial likelihood that Jackson will succeed on the merits of the misrepresentation issue.

stantive due process *Thompson v. Gallagher* claim. We hold further that it is not supportable on the basis of a *Thurston v. Dekle* procedural due process claim because that claim will not support reinstatement beyond the date of Jackson's completed post–termination hearing. We hold that the district court judge did not abuse his discretion in granting the preliminary injunction, however, because Jackson demonstrated that he was likely to succeed on the merits of his state law claim, a claim properly before the district court under the doctrine of pendent jurisdiction.

The judgment of the district court is AFFIRMED.