Seaborn R. WICKER, et al.

v.

FIRST FINANCIAL OF LOUISIANA SAVINGS AND LOAN ASSOCIATION, et al.

Civ. A. No. 86–889–B.

United States District Court, M.D. Lousiana.

June 24, 1987.

John Dale Powers, David L. Guerry, Patrick J. Cooper, Powers and Vaughn, Baton Rouge, La., for plaintiffs.

Steven W. Copley, New Orleans, La., for First Financial of La. Sav. & Loan Ass'n.

J. Glenn Dupree, Adcock & Dupree, David LeClere, Perrault,. Uter & LeClere, Baton Rouge, La., for River City Federal Sav. Bank.

POLOZOLA, District Judge.

This suit arises out of a complex series of transactions surrounding the purchase of four tracts of land in Florida. Named as the defendants in this suit are First Financial of Louisiana Savings and Loan Association ("First Financial") and River City Federal Savings Bank ("River City"). The plaintiffs'[1] contend that First Financial has violated 12 U.S.C. §§ 1464(q) et seq., (which is also known as the "Anti-Tying Act"). Plaintiffs have filed a state law claim against River City contending that River City breached certain loan commitments to Louisiana Equity Partners of Louisiana Partnership ("Louisiana Equity") on which plaintiffs had relied to their detriment.

River City has now filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. In the alternative, River City seeks to have the court exercise its discretion and refuse to assume pendent-party jurisdiction over the state law claim asserted against River City.

1. The plaintiffs in this case are Seaborn R. Wicker, William J. Dawson, LDW Partnership, Emerald Coast-Inlet Developers and RMW Developers, Inc.

2. Louisiana Equity Partners of Louisiana Partnership ("Louisiana Equity") is not a party to this lawsuit.

3. The first of these loans allegedly giving rise to this claim involved a $3.0 million loan which First Financial agreed to lend to the plaintiffs on Tract I if the plaintiffs agreed to guarantee the Neo-Classic debt. The second loan was a

## I. BACKGROUND

The complaint filed herein sets forth a series of complicated facts involving the purchase of four tracts of land containing approximately 105 acres of land located near Panama City Beach, Florida on the Gulf of Mexico. During the early part of 1984, several of the plaintiffs acquired options to purchase these four tracts of land. The options were to be exercised at one year intervals beginning in 1984. In order to exercise the first option (Tract I), First Financial agreed to loan the plaintiffs $3.5 million which was to be secured by a first mortgage on the first tract of land. Thereafter, plaintiffs entered into an act of exchange with Louisiana Equity[2] involving certain properties in Baton Rouge, Louisiana and Tract I in Florida. Louisiana Equity took Tract I subject to the bank debt and executed a "wrap-around" mortgage in favor of Emerald. Coast-Inlet Developers ("Emerald"), RMW Developers, Inc. ("RMW"), and LDW Partnership ("LDW") in the sum of $12,050,000.

Plaintiffs allege in this complaint that on at least two occasions First Financial conditioned the further extension of credit upon the plaintiffs' agreement to endorse and guarantee a certain third party debt whch was owed to First Financial by Neo-Classic Builders, Inc. ("Neo-Classic"). Plaintiffs further contend that First Financial also required that the land in Florida secure the Neo-Classic debt. Therefore, plaintiffs argue that because the loans were completely cross-collateralized, these conditions violated the federal "Anti-Tying" provisions of 12 U.S.C. § 1464(q).[3]

Count one of the complaint alleges a violation of 12 U.S.C. § 1464(q) against First Financial which was discussed above.[4]

$4.1 million loan to Louisiana Equity to be used to exercise the option on Tract II of the Florida property. The plaintiffs allege that they were required to personally endorse this loan to Louisiana Equity and assume and guarantee the Neo-Classic debt.

4. Paragraph 35 of the complaint which sets forth part of Count one alleges that "[d]efendants impermissibly tied and conditioned the extension of credit to plaintiffs[.]" It appears that plaintiffs have alleged a federal claim against both defendants. However, plaintiffs

Count two of the complaint alleges that River City represented to the plaintiffs that it would refinance the debt of Louisiana Equity in order to induce plaintiff and Louisiana Equity to enter into a $4.1 million loan. Plaintiffs allege that this refinancing never took place. As a result, Louisiana Equity has stopped making payments to plaintiffs under the wrap-around mortgage. Plaintiffs assert that River City is liable to the plaintiffs under the detrimental reliance provision of article 1967 of the Louisiana Civil Code.[5]

## II. DOES THE COURT HAVE SUBJECT MATTER JURISDICTION IN THIS CASE

### A. Overview of the Jurisprudence

This Court has jurisdiction over the claim asserted against First Financial under 12 U.S.C. § 1464(q)(3). The plaintiff asserts that this court also has jurisdiction over the state law claim asserted against River City as pendent to the claim against First Financial. Since complete diversity which is required by *Strawbridge v. Curtiss*, 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806) does not exist in this case, there is no independent basis for jurisdiction over River City.[6] Thus, the only basis for jurisdiction over the claim filed against River City is under the "pendent party" doctrine.

The doctrine of "pendent parties" jurisdiction has been before the Supreme Court on several occasions, but has never been explicitly approved.[7] The doctrine of pendent parties jurisdiction has long been recognized by most of the circuit courts, including the Fifth Circuit.[8]

The question of pendent party jurisdiction is very "subtle and complex ... with far-reaching implications." *Moor v. County of Alameda*, 411 U.S. 693, 715, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596 (1973). While the Supreme Court has never passed on the propriety of the doctrine, much guidance may be found in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) wherein the Court stated:

> If the new party sought to be joined is not otherwise subject to federal jurisdiction, there is a more serious obstacle to the exercise of pendent jurisdiction that if parties already before the court are required to litigate a state-law claim. Before it can be concluded that such jurisdiction exists, a federal court must satisfy itself not only that Art. III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence.

*Id.*, 427 U.S. at 18, 96 S.Ct. at 2422. Thus, the Court must determine whether Article III of the Constitution permits the exercise of pendent jurisdiction in this case, and if

---

state in their brief that their claims against First Financial are based on 12 U.S.C. § 1464(q) and that their claim against River City is based on state law. Plaintiffs' brief at page .3. After making this representation to the court, the plaintiffs devote their entire brief to pendent party jurisdiction. Therefore, it is assumed that plaintiffs have not stated a federal claim against River City.

5. Louisiana Civil Code article 1967 provides:
Cause is the reason why a party obligates himself.
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

6. See 28 U.S.C. § 1332.

7. Comment, *Unravelling the "Pendent Party" Controversy: A Revisionist Approach to Pendent and Ancillary Jurisdiction*, 64 B.U.L.Rev. 895, 914 (1984); see generally Wright, Miller and Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3567.2 (West 1984 & Supp.1986).

8. *Smith v. National Flood Insurance Program*, 796 F.2d 90 (5th Cir.1986); *Boudreaux v. Puckett*, 611 F.2d 1028 (5th Cir.1980); *Dick Meyers Towing Service, Inc. v. United States*, 577 F.2d 1023 (5th Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Florida East Coast Railway Co. v. United States*, 519 F.2d 1184 (5th Cir. 1975); *Mobile Oil Corp. v. Kelley*, 493 F.2d 784 (5th Cir.) *cert. denied*, 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296 (1974); *Connecticut General Life Insurance Co. v. Craton*, 405 F.2d 41 (5th Cir.1968).

so, whether Congress negated its existence by statute.

## B. The Constitution: Article III

■ The test which a district court must follow in determining whether Article III permits this Court to exercise jurisdiction over a related state law claim is set forth in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In order for this Court to have pendent jurisdiction,

> [t]he federal claim must have substance sufficient to confer subject matter jurisdiction on the court.... The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole. (Emphasis in the original.)

*Gibbs, supra,* 383 U.S. at 725, 86 S.Ct. at 1138.

A review of the record reveals that the three factors set forth in the *Gibbs* case have been met in the case before this Court. Therefore, this Court has the power under Article III to hear the case.

### 1) The substance of the federal claim.

At this stage in the proceedings, the Court is not concerned with the merit or lack thereof of plaintiffs' claim, but rather whether "prior decisions inescapably render the claims frivolous."[9] *Jackson v. Stinchcomb*, 635 F.2d 462, 471 (5th Cir. 1981); *Curtis v. Taylor*, 625 F.2d 645, 649–50 (5th Cir.1980). After reviewing the complaint in this matter, the Court cannot find that the claim is frivolous. Therefore, the federal claim is sufficient to support the exercise of subject matter jurisdiction by this Court over that claim.

### 2) Common nucleus of operative fact.

Both the state and federal claims in this case arise out of the same sequence of events surrounding the purchase of property in Florida. Much of the evidence is relevant to both claims. Plaintiffs assert that the promises alleged to have been made by River City induced them to enter into the $4.1 million loan with First Financial and Louisiana Equity. The effect these promises had on the plaintiffs is best understood in the context of the entire financing arrangement. Furthermore, only a loose factual connection is necessary to find that the claims arise out of a common nucleus of operative fact. Wright, Miller and Cooper, *supra,* § 3567.1 at page 117. This case involves much more than "a loose factual connection." The state and federal claims are indeed closely related.

### 3) Expect to try both claims in the same proceeding.

Pretermitting the fact that one claim is based on federal law and the other state law in nature, would the plaintiffs be expected to try these claims together? As noted earlier, the Court finds that the alleged inducement by River City is best understood in the context of the entire financing arrangement between the parties. Therefore, since the same facts are important to both claims, the plaintiff would normally be expected to try both of these claims at the same time in one judicial proceeding.

### C. Has Congress Negated the Existence of Jurisdiction in this Case?

Having found that this Court has the power under Article III of the Constitution to hear this case, the next inquiry is whether Congress has expressly or impliedly negated the existence of jurisdiction by statute. This was the concern of the Court in *Aldinger v. Howard, supra:*

> In short, as against a plaintiff's claim of *additional* power over a "pendent party," the reach of the statute conferring jurisdiction should be construed in light

9. The question of a federal claim is ordinarily decided on the pleadings. *Gibbs, supra,* 383

U.S. at 727–28, 86 S.Ct. at 1139–40; *Jackson v. Stinchcomb*, 635 F.2d 462, 471 (5th Cir.1981).

of the scope of the cause of action as to which federal judicial power *has* been extended by Congress. (Emphasis in the original.)

*Aldinger, supra,* 427 U.S. at 17, 96 S.Ct. at 2421. The Supreme Court concluded that simply because a state cause of action, similar in nature to a federal claim, provided a remedy against counties, would not and could not increase the jurisdiction of the federal district court to hear such a claim. It is clear that pendent party jurisdiction cannot be used to add parties which Congress has otherwise excluded.

Such is not the case here. Had these two claims been brought against the *same* defendant, this Court would have pendent jurisdiction to hear the state law claim. Congress has not removed this type of case from the subject matter jurisdiction of this Court. Therefore, Congress has not negated the exercises of jurisdiction over the state law claim in this case.

### D. A Matter of Discretion

 It appears that under *Aldinger,* this Court enjoys the power to hear the state law claim against River City. However, the question still remains whether this Court should exercise this power. Such matters are in the discretion of the trial court and not of plaintiff's right. *Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. at 1139; *Slaughter v. Allstate Insurance Co.,* 803 F.2d 857, 861 (5th Cir.1986); *Jackson, supra,* 635 F.2d at 471 (5th Cir.1981).

When a federal court finds jurisdiction in a typical pendent jurisdiction case, that jurisdiction is usually exercised. *Jackson, supra,* 635 F.2d at 472; Wright, Miller and Copper, *Federal Practice and Procedure: Jurisdiction 2d* § 3567.1 pg. 144 (West 1984 and Supp.1986). However, as stated above, pendent party cases as opposed to other pendent jurisdiction cases involve "subtle and complex" issues which should not be trampled over in a court's haste to exercise its power. Pendent party cases involve a "more serious obstacle to the exercise of pendent jurisdiction" and should be examined carefully before the court exercises jurisdiction in such a case.

While the Fifth Circuit has recognized the doctrine of pendent parties, it has not specifically listed the factors this Court should consider in the exercise of its discretion. It does seem however, that the Fifth Circuit has itself looked to considerations of judicial economy and convenience. *Smith v. National Flood Insurance Program,* 796 F.2d 90, 92 (5th Cir.1986); *Boudreaux v. Puckett,* 611 F.2d 1028, 1031 (5th Cir.1980). In other pendent jurisdiction cases, the Fifth Circuit has also considered the degree to which state issues predominate and the policy of avoiding needless decisions of state law as a matter of comity. Fairness to the litigants should also be considered. *Laird v. Board of Trustees of Institute of Higher Learning,* 721 F.2d 529, 534 (5th Cir.1983). These factors are in line with those enunciated by the Supreme Court in *Gibbs, supra,* 383 U.S. at 726–27, 86 S.Ct. at 1139.

However, the *Gibbs* factors cannot be applied indiscriminatly to this case.

The situation with respect to the joining of a new party, however, strikes us as being both factually and legally different from the situation facing the Court in *Gibbs* and its predecessors. From a purely factual point of view, it is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state-law claim over which there is no independent basis of federal jurisdiction. But it is quite another thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to join an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second defendant "derive from a common nucleus of operative fact." *Ibid.* True, the same considerations of judicial economy would be served insofar as plaintiff's claims "are such that he would ordinarily be expected to try them in one proceeding...." *Ibid.*

But the addition of a completely new party would run counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress.

*Aldinger, supra,* 427 U.S. at 14–15, 96 S.Ct. at 2420. Therefore, in addition to the *Gibbs* factors of judicial economy, convenience and fairness to the litigants, this Court must be especially mindful of comity between state and federal courts and the right of the second defendant to have the claims against it litigated in a state court of general jurisdiction. Comment, *"Pendent Party" Controversy, supra,* 64 B.U. L.Rev. at 932. Taking into consideration the above facts, the Court finds that River City be dismissed from this case.

It should be emphasized that this case is not one in which the jurisdiction over the federal claim is exclusively in federal court. In such a case, the federal courts have generally allowed a pendent party to be joined since a federal court is the only forum in which both claims may be tried together. *Aldinger, supra,* 427 U.S. at 18, 96 S.Ct. at 2422; *Smith, supra,* 796 F.2d at 92; *Florida East Coast Railway Co. v. United States,* 519 F.2d 1184, 1196 (5th Cir.1975).[10]

In the case before the Court, the doctrine of comity between the federal and state systems outweighs any consideration of judicial economy and convenience. As Justice (now Chief Justice) Rehnquist pointed out in *Aldinger,* the federal courts should not be made into courts of general jurisdiction by the application of the doctrine of pendent parties. *Aldinger, supra,* 427 U.S. at 15, 96 S.Ct. at 2420. It also appears that the state law claim of detrimental reliance is relatively new to Louisiana law having been added by the 1984 revision to the law of obligations. The effect of

this clause in article 1967 of the Civil Code is far from clear and the Louisiana courts have not addressed the issue as of yet.[11] Therefore, this Court believes the Louisiana state courts will be in a better position to determine the meaning of this new claim under Louisiana law.

The factor of fairness to the litigants presents a delicate problem. Normally in a pendent jurisdiction case, this factor of fairness dictates that the federal court exercise jurisdiction. Since the parties are already before a court on a federal claim in such a case, it is fair to all involved to litigate the state claims at the same time, thus saving time and money of both the parties and the court. However, in a pendent party case, the state law defendant is not before the court because of an independent basis of federal jurisdiction. It appears that fairness to River City dictates that its claim be decided by a state court.

Since this case may be tried entirely in state court, the doctrine of judicial economy does not weigh heavily in favor of the exercise of this Court's jurisdiction. A state court can try this case as efficiently as this Court. This case has been pending on this Court's docket for only six months. In fact, this is the first substantive motion filed by the parties in this case. Therefore, this Court is in no better position to try this case than would be a state court.

In summary, the Court finds that the effect on convenience and judicial economy is minimal if this Court exercises jurisdiction. The Court also finds that the effect on federal/state comity and fairness to the state defendant is great if this Court assumes jurisdiction because of the uncertainty of Louisiana law in this area. These factors strongly dictate that this Court should not exercise jurisdiction over the state law claim asserted against River City in this case. For this Court to assume

---

**10.** One commentator has argued that the Fifth Circuit has limited "pendent party" jurisdiction to cases involving exclusive federal jurisdiction. Comment, *"Pendent Party" Controversy, supra,* 64 B.U.L.Rev. at 917 n. 119. On at least one occasion, the Fifth Circuit has allowed pendent party jurisdiction in a non-exclusive jurisdiction setting while recognizing that such a case did "not pose the strongest possible case for juris-

diction." *Boudreaux v. Puckett,* 611 F.2d 1028, 1031 (5th Cir.1980).

**11.** For a discussion of the problems surrounding detrimental reliance in Louisiana, see generally, Student Symposium, *Detrimental Reliance,* 45 La.L.Rev. 753 (1985).

jurisdiction herein would unwisely encroach upon the jurisdiction of the state courts.

Therefore:

IT IS ORDERED that the motion of River City to dismiss be and it is hereby GRANTED.